512 A.2d 1071

**Stephen BARNETT**

v.

**STATE of Maryland.**

**No. 109, Sept. Term, 1985.**

Court of Appeals of Maryland.

July 30, 1986.

Jose F. Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Stephanie J. Lane, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

RODOWSKY, Judge.

This criminal appeal illustrates one way in which an accused who is on bail can waive rights involving presence at trial and thereby can be tried in absentia.

Appellant, Stephen Barnett (Barnett), was arrested without a warrant on February 17, 1984, and charged with (1) possession of heroin with intent to distribute and (2) resisting arrest. Routinely, Barnett would have been served with a copy of the statement of charges when it was prepared and filed. *See* former Maryland District Rule 720 h (now Maryland Rule 4–212(f)(1)). At his initial appearance before a commissioner in the District Court of Maryland that day Barnett requested a preliminary hearing and

indicated that he would employ private counsel. The commissioner set bail at a full $2,500 and Barnett was confined.

Barnett made bail through a corporate surety on February 19. The condition of that bond was

> that [Barnett] personally appear, whenever and wherever required, in any court in which the charges may be pending, or in which a charging document may be filed based on the same acts or transactions, or to which the cause may be transferred, removed, or, if from the District Court, appealed. [Appendix of Forms to former Maryland Rules of Procedure, Form 722 BB.]

The procedures required that Barnett sign the bail bond.

Barnett, without counsel, appeared before the District Court on April 10, 1984, for his preliminary hearing. The judge found probable cause and continued the same bail.

On April 23 the State filed criminal informations against Barnett in the Circuit Court for Baltimore City charging the same two offenses. Docket entries reflect, as to each information, "copy served receipt filed." The record does not reveal the first date by which Barnett had counsel, but the State served discovery disclosures and requests on defense counsel by May 22, 1984.

On June 14, 1984, an Assistant Public Defender entered his appearance for appellant at an "arraignment." Pleas of not guilty to the informations were entered and a jury trial was prayed.[1] Within thirty days from this date a trial date would have to have been set pursuant to former Md.R. 746a. The practice in the Circuit Court for Baltimore City is for the initial trial date to be set at the arraignment. *See State v. Frazier*, 298 Md. 422, 430–31, 470 A.2d 1269, 1274 (1984). *Frazier* further describes that court's procedure:

> After a trial date is assigned, there is a computerized procedure for sending a notice and summons to the

---

1. Former Md.R. 723 a did not require Barnett personally to be present for the "arraignment." The record does not reflect whether he was present or not.

defendant 28 days and 9 days before trial, and if he is incarcerated a writ of habeas corpus is issued to the institution. [*Id.* at 431 n. 8, 470 A.2d at 1274 n. 8.]

On the afternoon of July 17, 1984, in the courtroom presided over by Chief Judge Robert I.H. Hammerman, the State called the subject informations "for trial." Barnett and his counsel were present. In response to questions by the court clerk Barnett gave his age as 24, his address as 1706 North Wolfe Street (in Baltimore City), and counsel affirmed familiarity with the charges and waived reading of the informations. Counsel, after reiterating the plea of not guilty and the request for jury trial, advised that he was pressing a then pending defense motion to suppress. The court thereupon held an evidentiary hearing and denied the motion.

Then, in the presence of Barnett, the court told counsel that it was requesting 70 prospective jurors "for tomorrow morning" and that they probably would not be in the courtroom until 10:00 a.m. The court then said, "I ask counsel to be here with the defendant at 9:30." The court reviewed certain ground rules for the forthcoming voir dire and trial. It deferred a possible motion in limine with respect to Barnett's criminal record "until the time the defendant is advised of his right to testify or remain silent[.]" The session concluded with the court stating that "we will stand in adjournment until 9:30 tomorrow morning[.]"

On the morning of July 18 the court went on the record at 10:20 a.m. Counsel were present and the venire was on its way from a separate building, but Barnett was not present. Defense counsel advised that Barnett was to have met him at 9:00 a.m. in counsel's office, across the street from the building housing Judge Hammerman's courtroom. In a 9:15 a.m. telephone call Barnett had told his counsel's secretary that he was on his way. Counsel's law clerk was waiting in the office to bring Barnett to the courtroom but Barnett had not appeared. After an inconclusive discussion

the court recessed so that it and the attorneys for both parties could research the law.

Later, in a conference with counsel in chambers which spanned 11:27 a.m., the court took the position that Barnett had voluntarily absented himself and that the trial would proceed without Barnett being present. Relying on MD.R. 4–231(c)(1) and on *Reed v. State,* 52 Md.App. 345, 449 A.2d 448, *cert. denied,* 294 Md. 653 (1982), which had applied former Md.R. 724c1, the trial judge reasoned that the trial had commenced the preceding day and that by voluntarily absenting himself Barnett had waived his right to be present.

After the conference jury selection proceeded. The court told the venire, "As you may have noted the defendant in this case still has not appeared, and we are proceeding at this time, notwithstanding." At the conclusion of voir dire the judge told the venire that he would instruct the jury that the presumption of innocence applied, that the absence of the defendant was not in any way to be used against him, and that there was to be no prejudice whatsoever against the defendant because he may have been absent during all or a part of the proceedings before the jury. The court inquired if any prospective juror could not abide by those instructions. Three members of the venire who said they could not were excused. A jury was selected and court recessed until 2:45 p.m.

When court reconvened Barnett still had not appeared and testimony began. During that afternoon the judge revoked Barnett's bail so that, in the event he did appear, he would be held in custody.

The next morning, July 19, court convened at 9:35 a.m. Barnett was not present and had not communicated with his counsel. The judge stated for the record that his law clerk had telephoned each of 29 specifically identified hospitals in the Baltimore metropolitan area and had been advised that Barnett had not been admitted to any of them either on an emergency basis or as an inpatient. Defense counsel did

not question the accuracy of that statement. In the course of proceedings that morning the court also asked defense counsel if he had any information that Barnett's absence was other than voluntary and stated that, if so, the court would abort the trial on a defense motion for mistrial.

Testimony ended on July 19 and the court instructed the jury not to draw any prejudicial inferences against Barnett due to his absence. The jury found Barnett guilty on both charges. That afternoon the court issued a bench warrant for Barnett using the North Wolfe Street address as his residence.

The warrant was returned unexecuted on August 9, 1984, with the explanation by the deputy sheriff that Barnett's mother said he had moved. Barnett was apprehended September 18 and sentenced on November 5, 1984. At the sentencing neither Barnett nor his counsel gave any explanation on the record for Barnett's failure to appear at trial. Defense counsel did say that Barnett had given "a version of what took place to the probation department," but the appellant has not caused a copy of the probation report to be included in the record on this appeal. On the record before us Barnett's total comment concerning his having jumped bail is the following:

I would like to find out what section of law this falls under that you can be tried in front of a jury while you are not present in the courtroom. That is not proper procedure. That is what I would like to know.

Barnett appealed to the Court of Special Appeals and in his brief raised four questions, the third of which was, "Did the court err in trying Appellant's case in his absence?"

The intermediate appellate court thereafter invoked MD.R. 1015, "Certification of Cases to the Court of Appeals." It said that Barnett's appeal "raises a question of interpretation of Maryland Rule 4–231(c)(1), which provides that a defendant's right to be present at every stage of the trial is waived by a defendant who is voluntarily absent

after the proceeding has commenced." The Court of Special Appeals framed this question:

Under Maryland Rule 4–231(c)(1), if a defendant voluntarily absents himself during an overnight adjournment of the court, after the case has been called for trial and a pretrial motion has been heard and ruled upon but before commencement of jury selection, may that defendant be tried in absentia?

In relevant part Rule 4–231, "Presence of Defendant," provides:

(a) When Presence Required.—A defendant shall be present at all times when required by the court.…

(b) Right to be Present—Exceptions.—A defendant is entitled to be present at a preliminary hearing and every stage of the trial.…

(c) Waiver of Right to be Present.—The right to be present under section (b) of this Rule is waived by a defendant:

(1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or

(2) who engages in conduct that justifies exclusion from the courtroom, or

(3) who, personally or through counsel, agrees to or acquiesces in being absent.

### (1)

The question certified by the Court of Special Appeals is considerably more narrow than the third question raised by Barnett in his brief to that court. Underlying the certified question, as well as underlying the discussions between court and counsel at trial, is the unarticulated premise that the fact situation presented here must either be squeezed into MD.R. 4–231(c)(1) or the trial court could not have proceeded to try Barnett in absentia. That is too narrow a view.

The predecessor to Rule 4–231 was former Rule 724, "Presence of the Defendant," which in relevant part read:

a. *When Presence Required.*

The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by these Rules.

b. *When Presence Not Required.*

. . . .

c. *When Presence Waived.*

A defendant initially at trial waives his right to be present when:

1. He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his right to remain during trial; or

2. He engages in conduct to justify his being excluded from the courtroom.

In *Williams v. State*, 292 Md. 201, 211–12, 438 A.2d 1301, 1306 (1981), Judge Eldridge, writing for this Court, said:

As we have often pointed out, a criminal defendant's right to be present at every stage of his trial is a common law right, is to some extent protected by the Fourteenth Amendment to the United States Constitution, and is guaranteed by Maryland Rule 724.

. . . .

The right to be present, like most rights, is subject to waiver. Furthermore, we agree with the observation of the Court of Special Appeals in *Noble v. State,* [46 Md. App. 154, 159, 416 A.2d 757, 760 (1980)], that the two circumstances set forth in subsection c of Rule 724 are not the only circumstances under which a criminal defendant's right to be present can be waived.

Nor is subsection (c) of MD.R. 4–231 intended to limit or exhaust the possible situations giving rise to an effective waiver. The committee note to Rule 4–231 expressly states:

Except when specifically covered by this Rule, the matter of presence of the defendant during any stage of the proceedings is left to case law and the Rule is not intended to exhaust all situations.

In addition, minutes of this Court's Rules Committee confirm that the intent was not to restrict otherwise effective waivers. At the meeting of September 10–11, 1982, the Committee was considering a version of Rule 4–231(c) which would have provided that a defendant waived his right to be present at the trial when, after the trial had commenced, the defendant (1) was voluntarily absent or (2) engaged in conduct justifying exclusion. Judge McAuliffe, then chairman of the Committee and now a judge of this Court, recommended that there be a third subsection containing a general provision which would "simply indicate that there are other situations when the defendant [or] his counsel can waive the defendant's right to be present." A motion to that effect was unanimously adopted. That seems to be the origin of subparagraph (3) of Rule 4–231(c).

Consequently the answer to the third question raised by Barnett in his brief to the Court of Special Appeals lies in the general law of waiver and not in the interpretation of Rule 4–231(c)(1).[2]

(2)

This Court has power under Rule 815, "Procedure in Certified Cases from Court of Special Appeals," to modify a

---

**2.** *Reed v. State, supra,* 52 Md.App. 345, 449 A.2d 448, is the reported decision in this state closest on its facts to the instant case. In *Reed* voir dire had been completed and a jury panel chosen but not sworn when the court recessed for lunch. Reed never returned to the courtroom. The Court of Special Appeals approved trying Reed in absentia, because Reed had voluntarily absented himself "after the trial ha[d] commenced," within the meaning of former Rule 724 c. That analysis emphasized that impaneling of the jury is a "stage of the trial" at which the accused has a right to be present.

Rule 4–231(c) now speaks in terms of "the proceeding," and not of "the trial." Thus, in the instant case, one of the State's arguments is that, once the charges against Barnett were called for trial, the motion to suppress hearing, the jury selection, and the trial proper constituted one "proceeding." Barnett on the other hand argues that a single, complete "proceeding" ended on July 17 and a new "proceeding" started on July 18 at which Barnett was not present so that Rule 4–231(c) does not by its terms apply. These arguments are concerned more with semantics than with substance.

question so certified.[3] That power to modify was intended to give this Court as much flexibility in answering the substance of a question certified by the Court of Special Appeals as would a provision expressly authorizing question modification contained in an order of certification from a federal court pursuant to the Uniform Certification of Questions of Law Act, Md.Code (1974, 1984 Repl.Vol.), §§ 12–601 *et seq.* of the Courts and Judicial Proceedings Article. *Cf. Krashes v. White,* 275 Md. 549, 557, 341 A.2d 798, 802–03 (1975) (absent provision in certification order for reformulation of questions, this Court could not answer conditional subsidiary questions when condition was unsatisfied). So long as there is no prejudice to either party, this Court's exercise of the power to modify is not restricted to the time when the application for certification is granted. In the instant matter both parties have briefed the substantive issue of waiver, in addition to their positions respecting interpretation of Rule 4–231(c)(1). We therefore modify the certified question to read: "Did Barnett waive all rights involving presence so that the State could try him in absentia?"

(3)

■ If this case involved the Maryland common law right to be present at trial, and no more, the trial court's finding that Barnett had voluntarily absented himself necessarily meant that Barnett had acquiesced in being absent. This satisfies the waiver requirements of MD.R. 4–231(c)(3). In this case, however, Barnett's waiver also implicates his right "to be confronted with the witnesses against him," as guaranteed by art. 21 of the Maryland Declaration of

---

**3.** Rule 815(b), "Determination Whether to Accept," reads:

After docketing, the certification application shall be submitted to this Court for preliminary examination to determine whether the application will be (1) accepted as submitted, (2) modified, (3) enlarged to include the entire matter if certified as to a question of law only, (4) limited to a question of law only, if certified as to the entire matter, or (5) dismissed. No brief may be filed prior to the preliminary examination of the application.

Rights and by the Fourteenth Amendment to the United States Constitution. *See Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In the context of the right of confrontation the Supreme Court has said that "for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461[, 1466 (1938)]." *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314, 317 (1966).

An earlier leading case on waiver of confrontation is *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912). Diaz was convicted of a noncapital homicide in the Phillipines. On two occasions in the course of his trial he voluntarily absented himself and sent to the court a message expressly consenting that the trial proceed in his absence. On those occasions two witnesses for the Government were both examined and cross-examined. The Court held that

> where the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present. [*Id.* at 455, 32 S.Ct. at 254, 56 L.Ed. at 505.]

The Court endorsed the following reasoning of *Falk v. United States,* 15 App.D.C. 446, 454, 460 (1899), *cert. denied,* 181 U.S. 618, 21 S.Ct. 923, 45 L.Ed. 1030 (1901):

> "It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be law,

would be to prevent any trial whatever until the accused person himself should be pleased to permit it.

. . . .

"The question is one of broad public policy, whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries and turn them into a solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty [*i.e.*, pretrial release]." [223 U.S. at 457–58, 32 S.Ct. at 254–55, 56 L.Ed. at 506.]

Upon the adoption of the Federal Rules of Criminal Procedure in 1945 Rule 43 reflected the rule recognized in *Diaz* by providing in relevant part that "[i]n prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict."

Barnett does not challenge the fact-finding that he had voluntarily absented himself; but he nevertheless advances four points which challenge proceeding without the accused:

(a) Voluntary absence does not establish a *Johnson v. Zerbst* waiver;

(b) Waiver cannot be implied from a voluntary absence unless the absence begins after "the work of impaneling the jury has begun";

(c) The voluntarily absent defendant must have been informed in some manner of the consequences of failure to appear for trial; and

(d) In addition to voluntary absence and a finding of waiver, the trial court must consider other factors to determine the appropriateness of proceeding in absentia and it was inappropriate so to proceed here.

(a)

Barnett's first contention was rejected in *Taylor v. United States,* 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973). Taylor had been in court to hear the testimony on the first morning of his trial for selling cocaine but he never returned after the lunch recess. The trial proceeded to a guilty verdict. After Taylor was apprehended and sentenced he contended on appeal that, under *Johnson v. Zerbst,* mere voluntary absence from trial could not be construed as an effective waiver "unless it is demonstrated that he knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him." 414 U.S. at 19, 94 S.Ct. at 196, 38 L.Ed.2d at 177 (footnote omitted). After pointing out that "[t]he right at issue is the right to be present, and the question becomes whether that right was effectively waived by his voluntary absence," the Court said that

[i]t is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, ... entertained any doubts about his right to be present at every stage of his trial. [*Id.* at 20, 94 S.Ct. at 196, 38 L.Ed.2d at 177–78 (citation omitted).]

The court said that its holding was consistent with Fed.R. Crim.P. 43 and with *Diaz, supra.*

(b)

The holdings of *Taylor* and *Diaz* are not, according to Barnett, applicable to his case because trial had commenced in those two cases before the respective defendants absented themselves, whereas the work of impaneling the jury had not even begun when Barnett failed to appear. Because our concern is whether Barnett intentionally relinquished or abandoned a known right, whether or not trial began is not significant in and of itself. It is significant only as it

relates to the circuit court's conclusion that Barnett waived his rights involving presence at trial. In cases where waiver based on voluntary absence before jury selection was the issue the weight of authority, both numerically and persuasively, supports waiver under the facts here.

The United States Court of Appeals for the Fourth Circuit in *United States v. Peterson,* 524 F.2d 167, 183–84 (4th Cir.1975), *cert. denied,* 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976) has pointed out that

> *Diaz* provided almost verbatim the exception [to the right to be present] embodied in the second sentence of [former Fed.R.Crim.P.] Rule 43. It should be clear, however, that no "talismanic properties" attach to the point at which the trial begins. *Government of Virgin Islands v. Brown* (3d Cir.1975) 507 F.2d 186, 189. In speaking of a defendant's voluntary absence "after the trial has begun," the *Diaz* Court was referring merely to the factual context in which that particular defendant's voluntary waiver occurred—*i.e.,* after the commencement of his trial. Nothing in *Diaz* should be interpreted as precluding a court from continuing with a trial if the defendant voluntarily waives his presence before the trial commences. [Footnote omitted.]

We agree with the rule formulated in *State v. LaBelle,* 18 Wash.App. 380, 397–98, 568 P.2d 808, 818 (1977) which affirmed a conviction following the trial in absentia of a voluntarily absent defendant.

> [W]hen a criminal defendant is present at arraignment, enters a plea, receives actual notice of the time, date and place of the trial, deliberately absconds without a compelling reason, is represented by counsel at trial, and never offers a satisfactory explanation for his absence, a trial court may find such actions on the part of a defendant to amount to a knowing and voluntary waiver of his right to be present and may conduct the trial in his absence.

The factors enumerated in *LaBelle* were present in the following cases which hold that there had been an effective

waiver based on voluntary absence before trial commenced: *United States v. Powell,* 611 F.2d 41 (4th Cir.1979) (1975 revision to Fed.R.Crim.P. 43 which speaks of waiver through voluntary absence of a defendant "initially present" does not prevent trial in absentia of a defendant who never appeared for trial); *United States v. Pastor,* 557 F.2d 930 (2d Cir.1977); *United States v. Peterson, supra; Government of the Virgin Islands v. Brown,* 507 F.2d 186 (3d Cir.1975); and *United States v. Tortora,* 464 F.2d 1202 (2d Cir.), *cert. denied sub nom. Santoro v. United States,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972).

In Arizona a rule of criminal procedure expressly provides that proceedings, other than an arraignment or taking of a guilty plea, may be had against a voluntarily absent defendant. The Supreme Court of Arizona has regularly affirmed convictions in cases where the defendant voluntarily failed to appear for any portion of the criminal trial. *See State v. Davis,* 108 Ariz. 335, 498 P.2d 202 (1972); *State v. Tacon,* 107 Ariz. 353, 488 P.2d 973 (1971), *cert. granted,* 407 U.S. 909, 92 S.Ct. 2446, 32 L.Ed.2d 682 (1972), *cert. dismissed,* 410 U.S. 351, 93 S.Ct. 998, 35 L.Ed.2d 346 (1973); *State v. Taylor,* 104 Ariz. 264, 451 P.2d 312 (1969); *State v. Cumbo,* 96 Ariz. 385, 396 P.2d 11 (1964).

*Commonwealth v. Felton,* 224 Pa.Super. 398, 307 A.2d 51 (1973), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974) applies the distinction for which Barnett here contends, namely that waiver by voluntary absence after trial may be recognized but that a voluntary absence before trial begins will not be recognized as a waiver. The Pennsylvania intermediate appellate court relied on *Prine v. Commonwealth,* 18 Pa. 103 (1851) which stated that it was error to try a person for a felony in his absence, even with his consent. That rigid view had been applied by the United States Supreme Court in *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), but it was limited in *Diaz, supra,* 223 U.S. at 455, 32 S.Ct. at 254, 56 L.Ed. at 505, to an accused who is in custody. *See also* J. Cook, *Constitutional Rights of the Accused—Trial Rights,* at 19

(1974). The Pennsylvania court was of the view that "no court has ever held that a defendant waives his right to be present at trial by failing to appear on the date scheduled for trial." 224 Pa.Super. at 402, 307 A.2d at 53. That statement was not accurate when made and is less accurate today. Finally, the Pennsylvania court envisioned a horrible extreme, saying, "If the waiver rule were extended to include actions taken by an accused prior to trial, fugitives who are unaware of the charges against them could be tried in absentia." *Id.* at 403, 307 A.2d at 53. The rule taken from *LaBelle, supra,* which we adopt, precludes any trial under those circumstances. Obviously there can be no voluntary relinquishment of a known right to be present at one's trial if the accused does not know of the accusation and of the trial date. Judge Lumbard, writing for the Second Circuit in *United States v. Tortora, supra,* 464 F.2d at 1209, emphasized those waiver requirements by saying:

> Before a trial may proceed in the defendant's absence, the judge must find that the defendant has had adequate notice of the charges and proceedings against him.... It must clearly appear in the record ... that the defendant was advised when proceedings were to commence and that he voluntarily, knowingly, and without justification failed to be present at the designated time and place before the trial may proceed in his absence.

■ Whether or not jury selection has begun has nothing per se to do with the presence or absence of a valid waiver.

### (c)

Barnett, in reliance on New York decisions, advocates that there can be no waiver of rights involving presence at trial unless the voluntarily absent defendant knew that the trial could proceed without the defendant ever having been present. In *People v. Parker,* 57 N.Y.2d 136, 141, 440 N.E.2d 1313, 1316, 454 N.Y.S.2d 967, 970 (1982), the court held:

> In order to effect a voluntary, knowing and intelligent waiver, the defendant must, at a minimum, be informed in

some manner of the nature of the right to be present at trial and the consequences of failing to appear for trial (see *Schneckloth v. Bustamonte,* 412 U.S. 218, 243–244, 93 S.Ct. 2041, 2056, 36 L.Ed.2d 854; *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747). This, of course, in turn requires that defendant simply be aware that trial will proceed even though he or she fails to appear.

*See also People v. Trendell,* 61 N.Y.2d 728, 460 N.E.2d 1101, 472 N.Y.S.2d 616 (1984).

*Schneckloth* involved the validity of a consent to a search and held that the prosecution need not prove that the person consenting knew of the right to refuse consent. *Brady* was concerned with the voluntariness of a guilty plea and held that a motive for so pleading of accepting the certainty or probability of a lesser penalty does not render the plea involuntary. We are not persuaded that those Supreme Court decisions are authority for the proposition that the waiver of rights involving presence at trial requires knowledge of "the consequences of failing to appear for trial[.]"

■ *Taylor v. United States, supra,* 414 U.S. 17, 94 S.Ct. 194, rejected on factual grounds an argument that knowledge that trial will proceed is an element of waiver. The Supreme Court viewed it to be incredible that Taylor who had fled from the courthouse in the midst of a trial would not know that the trial could continue in his absence. Further, there was no contention that Taylor was unaware of the consequences and there was no issue that his disappearance was voluntary. In the case before us Barnett, on the afternoon before the morning of his trial, sat in the courtroom with the judge, prosecutor, and defense counsel, heard the police officer who was the principal witness against him examined in connection with a pretrial motion, and heard the judge announce that 70 prospective jurors would be brought to the courtroom for Barnett's trial by

ten o'clock the next morning. It is as incredible to consider that Barnett did not know that his trial could proceed as it was to consider that Taylor did not know.

In any event, what the elements of a valid waiver might be is a question of law. *Taylor* pointed out that "[t]he right at issue is the right to be present, and the question becomes whether that right was effectively waived by [the defendant's] voluntary absence." 414 U.S. at 20, 94 S.Ct. at 196, 38 L.Ed.2d at 177–78. Barnett, by absconding on the morning of trial, had to know that he was waiving all of his rights involving his presence at that trial. That is the relevant consideration.

> It is true that a waiver is a voluntary relinquishment of a known right and, without knowledge of a right, there can be no waiver. But the right to try a defendant in absentia rests upon his waiver *of his known right to be present, not upon the (possibly unknown) court's right to try him while absent.* Here, defendant knew that he had a right to be present and has failed to show that he did not voluntarily elect to waive that right. [*State v. Davis, supra,* 108 Ariz. at 337, 498 P.2d at 204 (emphasis in original).]

Finally, even if Barnett were genuinely ignorant of the fact that his trial would proceed without him, we would not vacate the conviction on the facts of this case. If Barnett's question to the court about its legal authority to proceed before the jury without him is taken to evidence genuine ignorance, it must also be taken to evidence a tactic which failed and a belief on Barnett's part that he could abort the trial by absconding. *Diaz* rejected that tactic long ago.

> "Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted an escape from prison, or an absconding from the jurisdiction while at large on bail, during the pendency of a trial before a jury, to operate as a shield." [223 U.S. at 458,

32 S.Ct. at 255, 56 L.Ed. at 506, quoting from *Falk v. United States, supra,* 15 App.D.C. at 460.]

(d)

■ Barnett's final point is that, even if there had been an effective waiver of rights involving presence, the trial court abused its discretion in proceeding to try him in absentia. Obviously a trial court which has concluded that a defendant is voluntarily absent is not compelled to conduct a trial in absentia. The court has a discretion to postpone the trial while awaiting return on a bench warrant.

On this phase of the case Barnett emphasizes aspects of *United States v. Tortora, supra.* The Second Circuit listed as factors in the decision whether to proceed (1) the likelihood that trial could soon take place with the defendant present; (2) the difficulty of rescheduling, particularly in multiple defendant trials; and (3) the burden on the prosecution in having to undertake two trials. The court then said that "[i]t is difficult for us to conceive of any case where the exercise of this discretion would be appropriate other than a multiple-defendant case." 464 F.2d at 1210 n. 7. The Fifth Circuit has said that the *Tortora* factors should also include inconvenience to jurors. *See United States v. Benavides,* 596 F.2d 137, 140 (5th Cir.1979). Barnett asserts that the circuit court did not assess the likelihood of whether he could have been located in a reasonably expeditious manner and that he was the only defendant to be tried in a case involving but two witnesses for the State.

There was no abuse of discretion here. The concern of the trial judge must be with whether the absent defendant has in fact voluntarily relinquished known rights involving presence at trial. Courts should not be quick to hold that the delinquencies of the defendant effect a waiver of rights that are to be carefully safeguarded. *See People v. Evans,* 21 Ill.2d 403, 406, 172 N.E.2d 799, 800 (1961).

In this case the trial judge knew that Barnett knew he was to be in court at 9:30 a.m. on July 18, 1984, for trial on the merits because the judge had personally told Barnett to be there. The judge could also take judicial notice that Barnett's residence, as of July 17 at least, was approximately three miles from the courthouse. Barnett had telephoned his counsel's office at about 9:15 a.m. on the 18th to advise that he was on his way. The trial judge waited one hour after 9:30 for Barnett to arrive before discussing alternate procedures with the attorneys. By that time it was clear that Barnett was not simply delayed in traffic. The possibilities were that Barnett had absconded or had suffered an injury or illness. The trial judge waited an additional hour or more, with no word from Barnett, before beginning jury selection. By that time the only justification for Barnett's absence, based on the facts known to the court, was the remote possibility that Barnett was so seriously injured or ill through no deliberate act on his part that he could not even ask someone to communicate with the court for him. The great probability was that Barnett had absconded. Even so, the court caused a telephone survey of all the area hospitals to be begun, the eventual results of which were negative.

The court began jury selection and, after the luncheon recess, the taking of testimony, recognizing that if Barnett were to appear, or if defense counsel could justify his absence, the court would grant a defense motion for mistrial. The circuit court also had power to grant a new trial on motion filed within ninety days after the imposition of sentence upon finding that an "unjust" verdict had been rendered. See MD.R. 4–331(b)(2). But when Barnett appeared at sentencing he gave no justification for his absence from trial.

CERTIFIED QUESTION ANSWERED AS ABOVE SET FORTH. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR FURTHER PROCEEDINGS.