685 A.2d 441

**Todd Erik STONE**

**v.**

**STATE of Maryland.**

**No. 146, Sept. Term, 1995.**

Court of Appeals of Maryland.

Nov. 26, 1996.

Denise O. Shaffer, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Celia Anderson Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J.,* and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

Following his conviction in the District Court of Maryland, the Petitioner, Todd Erik Stone, appealed to the Circuit Court for Worcester County in exercise of his right to trial de novo. Md.Code (1974, 1995 Repl.Vol., 1996 Cum.Supp.) § 12–401(f) of the Courts and Judicial Proceedings Article. The circuit court dismissed his appeal. The question we must decide in this case is whether the circuit court may consider an appeal withdrawn and dismiss the appeal in a criminal case from a judgment of the District Court when the defendant failed to appear because he was incarcerated out-of-state and his failure to appear was not wilful, voluntary nor a result of neglect or inaction on his part. We shall hold that the circuit court erred in dismissing Petitioner's appeal.

## I.

This case stems from Petitioner Todd Erik Stone's conviction in the District Court of Maryland sitting in Worcester County for theft over the value of $300, in violation of Maryland Code, (1957, 1996 Repl. Vol.) Article 27, § 342. On September 10, 1993, the District Court issued a warrant for Stone's arrest for theft. After the State learned that Stone was incarcerated at the State Correctional Institution in Cresson, Pennsylvania, the State's Attorney for Worcester County lodged a detainer against him for the theft charge pending in the District Court.

Petitioner exercised his rights under Article III of the Interstate Agreement on Detainers (I.A.D.) and requested final disposition of the theft charge pending in Worcester

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

County, Maryland.[1] Stone was transported to Maryland, the outstanding arrest warrant was served upon him, and his trial was scheduled in the District Court. On June 29, 1995, Stone was convicted in the District Court of theft over the value of $300. On the same day, the District Court sentenced him to five years incarceration, all but eighteen months suspended, three years probation to be served consecutive to his Pennsylvania sentence. The Maryland authorities then returned Stone to Pennsylvania to complete his sentence.

On July 21, 1995, Stone noted a timely appeal to the Circuit Court for Worcester County. *See* Md.Code (1974, 1995 Repl. Vol., 1996 Cum.Supp.) § 12–401 of the Courts and Proceedings Article. The circuit court scheduled Stone's trial for October 12, 1995. The clerk of the circuit court notified Stone at the Pennsylvania State Correctional Institute of his trial date. The notice, a circuit court summons, advised Stone that his case had been scheduled for a jury trial on October 12, 1995, and commanded him to appear before the Circuit Court for Worcester County on September 6, 1995, to answer a charging document (his de novo appeal) filed in that court, unless counsel entered a appearance before that date. On September 5, 1996, the Public Defender entered an appearance line, entered a plea of not guilty to the offense on behalf of Stone, elected a trial by jury, and demanded a speedy trial. In a letter dated September 6, 1995, the Public Defender advised Stone that his appeal had been filed in the circuit court and that he "must file another request for disposition under the Interstate Detainer Act so that PA. will bring you for your new trial. You can get the forms at your jail in PA and file them immediately."

---

1. The Interstate Agreement on Detainers is a compact among forty-eight states, Puerto Rico, the U.S. Virgin Islands, the District of Columbia, and the United States. *See* Leslie W. Abramson, *The Interstate Agreement on Detainers: Narrowing Its Availability and Application,* 21 N.E. J. Criminal & Civil Confinement 1 (1995). Under the I.A.D., either a prisoner incarcerated in a penal facility of another state, or the state in which untried criminal charges are pending against the prisoner may request his temporary transfer for trial on the untried charges. *State v. Hicks,* 285 Md. 310, 313 n. 1, 403 A.2d 356, 358 n. 1 (1979).

Meanwhile, in Pennsylvania, Stone attempted to comply with his attorney's advice. On a Pennsylvania Department of Corrections form, Stone sent a brief note to a Pennsylvania prison records administrator, stating:

> I was over to see you last week concerning a court date I have in Maryland on 10/12/95. I believe you were to check on it & get back with me. I need to refile the Interstate Agreement. Can you see me soon about this matter?

The documents from Stone's prison institutional file suggest that the Pennsylvania officials took the position that the I.A.D. was not available to Stone since he had already been tried and sentenced on the charges underlying the detainer lodged against him.[2] Handwritten notes in Stone's file indicate that the Pennsylvania officials believed that Stone was pursuing an appeal of his sentence on Detainer # 617981O. The prison record reads:

> Called Public Defenders Office in Snow Hill, Md. re: I.A.D. and appeal of sentence on Detainer # 617981O. . . . [T]hey will have to get a Governor's Warrant to take subj. out since he went out under I.A.D. and was sentenced. Mrs. Murphy said she never heard of this and will check it out. . . . [3]

Petitioner was not present when his case was called for trial in the circuit court. Stone's attorney explained to the court that Stone was incarcerated in Pennsylvania, and because

---

**2.** Petitioner does not fault the Commonwealth of Pennsylvania for refusing to respond to the provisions of the I.A.D. Petitioner aptly notes that the I.A.D. apparently was not drafted with a two-tiered trial system in mind and, consequently, it does not address those circumstances where a single charging document results successively in both a District Court conviction and sentence, as well as a pending charge in the circuit court. We agree with Petitioner's observation that "it is easy to understand why a prison official in another state would take the position that a prisoner, who was transported once on an untried charging document and who has received a sentence for that charge, is not entitled under the I.A.D. to be transported again."

**3.** This information was not available to the Circuit Court for Worcester County when it dismissed Petitioner's appeal on October 12, 1995. This information became part of the record on August 23, 1996, when this Court granted Petitioner's motion to supplement the record.

there was not a detainer within the I.A.D. in effect against Stone, Stone was unable to invoke the provisions of Article III of the I.A.D. that would trigger his transportation to Maryland. The State's Attorney contended that the State had done all that was required and that Stone's absence was due to his failure to follow the proper procedures under the I.A.D. The court agreed with the State and dismissed the appeal. The docket entry in the circuit court reads:

> 1995, Oct. 12 . . . . Case is to be remanded back to District Court. The defendant having failed to appear as required, and lack of action on his part, the appeal is considered withdrawn and it is DISMISSED by the Circuit Court.

Stone appealed to the Court of Special Appeals, and we granted certiorari before that court considered the matter. We hold that the circuit court erred when it dismissed Stone's de novo appeal and we therefore reverse.

## II.

Petitioner contends that the trial court erred in dismissing his appeal and requests that this Court reinstate his appeal. He maintains that the trial court erred in finding that he failed to appear due to his own inaction. He argues that without a detainer lodged against him, he was unable to invoke the provisions of the I.A.D. that would entitle him to be transported to Maryland.

The State maintains that the circuit court properly dismissed Stone's appeal and that Stone did not need a second detainer. The State argues that "the charges that Stone faced in the circuit court, identical to those upon which he was tried in the District Court, fall within the purview of the I.A.D." According to the State, Stone should have asserted his rights under the I.A.D., by "formally requesting final disposition of the circuit court charges." It is the State's position that Stone could have been transferred to Maryland for his circuit court trial based on the initial detainer lodged against him before his District Court trial. Since he could have invoked the

I.A.D. but did not, the State continues, Stone failed to appear due to his own inaction and thus dismissal was appropriate.

### III.

This case addresses the interaction of Maryland's two-tiered trial court system and the Interstate Agreement on Detainers. We shall begin with an overview of both schemes before we explore how they interact and how they apply in this case.

### A.

■ Maryland, along with a several of our sister states, has a two-tiered trial court system that provides for trial de novo on appeal to the general jurisdiction trial court.[4] *See, e.g., Hardy v. State*, 279 Md. 489, 490, 369 A.2d 1043, 1045-46 (1977). The District Court of Maryland has original jurisdiction in all misdemeanor cases, and certain designated felonies, including both felony and misdemeanor theft in violation of Article 27, §§ 342-344. Md.Code (1974, 1995 Repl.Vol., 1996 Cum.Supp.) § 4-301(b)(2) of the Courts and Judicial Proceedings Article.

■ A defendant convicted in the District Court may appeal to the circuit court for a trial de novo. *See* Md.Code (1974, 1995 Repl.Vol., 1996 Cum.Supp.) § 12-401(f) of the Courts and Judicial Proceedings Article (an appeal from District Court to circuit court shall be tried de novo). The trial de novo in circuit court proceeds on the original District Court charging document, *Lewis v. State*, 289 Md. 1, 4-5, 421 A.2d 974, 977 (1980), and the District Court judgment remains in effect pending the appeal to the circuit court, unless and until superseded by a judgment of the circuit court or a disposition by *nolle prosequi* or stet. Maryland Rule 7-112; *see Stanton*

---

4. *See, e.g.,* Alabama, Ala.Code § 12-12-71 (1996); North Carolina, N.C. Gen.Stat. § 7A-290 (1995); Rhode Island, R.I. Gen. Laws § 12-22-1 (1995).

 Until January 1, 1994, Massachusetts also had a two-tiered trial court system. 1993 Mass. Acts ch. 12, § 9; 1992 Mass. Acts ch. 379, §§ 193, 226.

*v. State,* 290 Md. 245, 428 A.2d 1224 (1981). De novo appeals, however, are treated "as wholly original proceedings, that is, as if no judgment had been entered in the lower court." *Hardy v. State,* 279 Md. 489, 493, 369 A.2d 1043 (1977). Thus, under the Maryland scheme, the circuit court proceeding occupies a unique position as both an appeal and a trial.[5] Because the District Court judgment remains in effect after a circuit court appeal has been dismissed, dismissal of the appeal has different consequences than the dismissal of charges in an original trial. Dismissal of the charges in an original trial often benefits the defendant, particularly when the charges are dismissed with prejudice. Dismissal of the circuit court appeal, on the other hand, deprives the appellant of his right to appeal a District Court judgment as guaranteed by statute in Maryland.

 An appeal from a judgment of the District Court is an appeal as a matter of right. Under Maryland Rule 7–114, the circuit court may dismiss an appeal when "an appeal to be heard de novo has been withdrawn pursuant to Rule 7–112." Maryland Rule 7–112 provides in pertinent part:

(d) Withdrawal of Appeal; Entry of Judgment.

(1) An appeal shall be considered withdrawn if the appellant files a notice withdrawing the appeal or fails to appear as required for trial or any other proceeding on the appeal.

(2) Upon a withdrawal of the appeal, the circuit court shall dismiss the appeal, and the clerk shall promptly return the file to the District Court. Any order of satisfaction shall be docketed in the District Court.

Thus, an appellant's failure to appear for trial constitutes a withdrawal of the appeal, which in turn provides grounds for dismissal.

---

5. We observed in *State v. Jefferson,* 319 Md. 674, 682, 574 A.2d 918, 921 (1990), that

"the District Court trial is complete unto itself. It does not act as a preliminary proceeding to a possible de novo appeal. Nor does the de novo appeal 'wipe the slate clean.' "

■ We find the rationale in our cases addressing the defendant's right to be present at trial instructive. In order to waive the right to be present at trial, a defendant must have voluntarily failed to appear, engaged in disruptive conduct in the courtroom, or at least have agreed to or acquiesced in his absence from the trial. Maryland Rule 4–231(c); *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Walker v. State*, 338 Md. 253, 658 A.2d 239 (1995); *Barnett v. State*, 307 Md. 194, 202–03, 512 A.2d 1071, 1078–79 (1986). Likewise, the right to be present at a trial de novo cannot be considered waived by non-appearance, that is, withdrawn, when the trial court has information that the appellant's failure to appear was neither wilful nor voluntary. *Cf.* Maryland Rule 4–231(c); *Stewart v. State*, 334 Md. 213, 638 A.2d 754 (1994); *Barnett*, 307 Md. at 212, 512 A.2d at 1079. Of course, when a defendant fails to appear at the designated time and place, and there is nothing before the court to justify the defendant's absence, it is proper to presume that the defendant has withdrawn the appeal. *See* Maryland Rule 7–112(d).

Because Petitioner's counsel advised the circuit court of Stone's whereabouts, we must evaluate what, if any, action Petitioner could have taken while serving his sentence in Pennsylvania to facilitate his presence at his de novo appeal in the circuit court. We turn now to a brief overview of the I.A.D.

## B.

■ As this case demonstrates, a Maryland defendant's right to two trials on the same charging document complicates the procedures for resolving detainers under the I.A.D. The Interstate Agreement on Detainers consists of nine articles and is codified at Maryland Code (1957, 1996 Repl.Vol.) Article 27, §§ 616A–616R. The purpose of the I.A.D. is to encourage the expeditious disposition of charges and to establish cooperative procedures among member parties to facilitate such resolution. *United States v. Mauro*, 436 U.S. 340, 351, 98 S.Ct. 1834, 1842–43, 56 L.Ed.2d 329 (1978); *State v. Jefferson,*

319 Md. 674, 679, 574 A.2d 918, 920 (1990). The drafters of the Agreement also desired to remedy the adverse side-effects that detainers may have on prisoners.[6] This is reflected in Article I, which states, in pertinent part:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation.

Md.Code (1957, 1996 Repl.Vol.) Art. 27, § 616B.

The I.A.D. is applicable when there is an untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner. Md.Code (1957, 1996 Repl.Vol.) Art. 27, § 616D(a). The provisions of the I.A.D. are activated only when a detainer based on an untried indictment, information or complaint is filed with the custodial State by a member party. *Mauro,* 436 U.S. at 343, 98 S.Ct. at 1838–39; *Clipper v. State,* 295 Md. 303, 307, 455 A.2d 973, 975 (1983); *Burns v. State,* 523 So.2d 604, 606 (Fla.Dist.Ct.App.1987), *review denied,* 534 So.2d 398 (Fla. 1988); *People v. Hood,* 223 Ill.App.3d 157, 164 Ill.Dec. 851, 583 N.E.2d 1173 (1991), *cert. denied,* 144 Ill.2d 638, 169 Ill.Dec. 147, 591 N.E.2d 27 (1992); *State v. Anderson,* 121 Wash.2d 852, 855 P.2d 671, 676 (1993); *see also* Leslie W. Abramson, *The Interstate Agreement on Detainers: Narrowing Its*

---

**6.** The disadvantages a prisoner may suffer as a result of a detainer were presented to the 91st Congress. The House and Senate Reports noted:

> [The prisoner] is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing.

H.R.Rep. No. 1018, 91st Cong., 2d Sess. 3 (1970); S.Rep. No. 1356, 91st Cong., 2d Sess. 3 (1970), U.S.Code Cong. & Admin.News 1970, p 4866.

*Availability and Application,* 21 N.E. J.CRIM. & CIV. CONFINE-MENT 1 (1995).

Although the I.A.D. does not define detainer, this Court has described a detainer "within the contemplation of the I.A.D. [as] 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.'" *Jefferson,* 319 Md. at 678 n. 2, 574 A.2d at 919–20 n. 2 (quoting H.R.Rep. No. 1018, 91st Cong., 2d Sess. 2 (1970) and S.Rep. No. 1356, 91st. Cong., 2d Sess. 2 (1970), U.S.Code Cong. & Admin.News 1970, pp. 4864, 4865). The Supreme Court has more generally defined a detainer as a "request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when the release is imminent." *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). Numerous cases have further refined what constitutes a detainer for purposes of the I.A.D. *Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (holding that a detainer based on a parole violation does not qualify under the I.A.D.); *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (holding that a writ of *habeas corpus ad prosequendum* does not constitute a detainer for purposes of the I.A.D.); *Hopper v. United States Parole Commission,* 702 F.2d 842 (9th Cir.1983) (same as *Carchman*); *State v. Smith,* 316 Md. 223, 557 A.2d 1343 (holding that a felony arrest warrant lodged as a detainer is effective to invoke the I.A.D.) (1989); *Clipper v. State,* 295 Md. 303, 455 A.2d 973 (1983) (same as *Carchman*); *State v. Boone,* 40 Md.App. 41, 388 A.2d 150 (1978) (same as *Mauro*); *People v. Castoe,* 86 Cal.App.3d 484, 150 Cal.Rptr. 237 (1978) (holding that detainer lodged against a prisoner who has been convicted but not yet sentenced is not effective to invoke I.A.D.); *People v. Hood,* 223 Ill.App.3d 157, 164 Ill.Dec. 851, 583 N.E.2d 1173 (1991), *cert. denied,* 144 Ill.2d 638, 169 Ill.Dec. 147, 591 N.E.2d 27 (1992) (holding that informal communication between police departments in two states concerning outstanding warrants against a prisoner did not constitute a detainer); *People v. Randolph,* 85

Misc.2d 1022, 381 N.Y.S.2d 192 (N.Y.Sup.Ct.1976) (same as *Castoe*); *State v. Barefield*, 110 Wash.2d 728, 756 P.2d 731 (1988) (same as *Castoe*).

The I.A.D. establishes procedures by which a member party may obtain for trial a prisoner incarcerated in another jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction. *United States v. Mauro*, 436 U.S. at 343, 98 S.Ct. at 1838–39. Either the prisoner or the prosecutor can initiate proceedings under the I.A.D. Article III allows the prisoner to request disposition of pending out-of-state charges. Article IV allows the prosecutor in the state where charges are pending to initiate proceedings and to secure the defendant's presence for trial. *See Laster v. State*, 313 Md. 548, 546 A.2d 472 (1988); *see also* Abramson, *supra.*

Article III of the I.A.D., codified at Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 616D, enables the prisoner to request a final disposition of the charge underlying the detainer. Md.Code (1957, 1996 Repl.Vol.) Art. 27, § 616D(c). The prisoner may make a request for a final disposition of the indictment, information or complaint underlying the detainer. Md.Code (1957, 1996 Repl.Vol.) Art. 27, § 616D(a); see *Laster*, 313 Md. at 554, 546 A.2d at 475. Once the prisoner makes this request, the warden of the prison completes the required forms and sends them to the prosecutor in the receiving state. *See* Md.Code (1957, 1996 Repl.Vol.) § 616D(d); *Laster*, 313 Md. at 554, 546 A.2d at 475. The prosecutor prepares and sends two more forms to the warden in sending state. *See Laster*, 313 Md. at 554–55, 546 A.2d at 476. To complete the process, the prisoner is transported to the receiving state. *See* Md.Code (1957, 1996 Repl.Vol.) § 616F(a). Under Article III, the receiving state must dispose of the detainer, by trying the prisoner or otherwise, within 180 days of the prosecutor's receipt of the prisoner's request or face dismissal of the charges underlying the detainer. Md.Code (1957, 1996 Repl. Vol.) § 616D(a); *see Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993); *Laster*, 313 Md. at 552, 546 A.2d

at 474. Article IV, codified at Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 616E, permits the receiving state to initiate proceedings and to secure temporary custody of an out-of-state prisoner in order to dispose of the charges underlying the detainer. *Laster,* 313 Md. at 552–53, 546 A.2d at 475. Under Article IV, the receiving state must dispose of the charges within 120 days after the prisoner arrives in the state, or risk dismissal of the charges. Md.Code (1957, 1996 Repl. Vol.) Art. 27, § 616E(c).[7]

## IV.

The heart of the issue in this case is whether the trial court properly concluded that Petitioner's appeal was withdrawn when he failed to appear for his trial de novo. As the record indicates, the trial court concluded that Petitioner's appeal was withdrawn based on his inaction. Because we conclude that an appeal may not be considered withdrawn under Rule 7–112 when the court has information that an appellant has not failed to appear wilfully or voluntarily, we must determine whether Stone's absence was wilful or voluntary. Specifically, we must determine whether Stone could have invoked the I.A.D. under the circumstances facing him after his District Court conviction. Because we conclude that Petitioner could not have invoked the I.A.D. successfully and his absence was

---

7. Article IV also prohibits a prisoner's return to the sending state until the prisoner is tried on the charges underlying the detainer. Md.Code (1957, 1996 Repl.Vol.) Art. 27, § 616E(e). Coined the "anti-shuffling provision," § 616E(e) seeks to avoid the deleterious effects that constantly moving the prisoner back and forth between states has on the rehabilitative efforts of the prison. *See* Md.Code (1957, 1996 Repl.Vol.) Art. 27, § 616B.

This Court construed the anti-shuffling provision in *State v. Jefferson,* 319 Md. 674, 574 A.2d 918 (1990), another case that involved an out-of-state prisoner's circuit court appeal. In *Jefferson,* we held that returning a prisoner to the sending state between the District Court trial and the circuit court trial de novo did not violate the anti-shuffling provision because "[t]he final judgment rendered ... in the District Court satisfied § 616E(e)'s requirement that a 'trial' be 'had.' " *Jefferson,* 319 Md. at 684, 574 A.2d at 922.

not wilful, voluntary, nor a result of inaction or neglect on his part, we reverse.

## A.

■■■ Stone argues that his presence at trial depended on his ability to invoke the I.A.D. successfully. The State maintains that Stone should have filed I.A.D. Form II, formally requesting final disposition of the circuit court charges. In order to determine whether Petitioner was able to undertake any action to secure his presence in the circuit court to pursue his appeal, we must decide whether he could have done any more to activate the provisions of the I.A.D. No one disputes that Stone properly invoked the provisions of the I.A.D. to request trial on the charges in the District Court. Both parties also agree that the State did not file a second detainer against Stone. The State argues that Stone could have filed another request for disposition based on the prior detainer. We disagree.

In *State v. Jefferson*, 319 Md. 674, 574 A.2d 918 (1990), this Court held that a detainer lodged against a prisoner for charges he faces in District Court is removed once the District Court trial results in a conviction. *Id.* at 683, 574 A.2d at 922–23. The facts in *Jefferson* strongly resemble the facts in the present case. *Jefferson*, however, dealt with the anti-shuffling provision in Article IV. Md.Code (1957, 1996 Repl.Vol.) Art. 27, § 616E(e).[8]

The prosecutor initiated Jefferson's transfer from the Lorton Penitentiary in Virginia to Montgomery County, Maryland for a trial in the District Court of Maryland. Like Stone, Jefferson was convicted in the District Court, noted an appeal to circuit court, and then was returned to Lorton by the Maryland authorities. Unlike Stone, however, Jefferson

---

**8.** Section 616E(e) provides that "[i]f trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment," the court shall dismiss the charging document with prejudice. See *supra* note 7 for a more detailed discussion of § 616E(e), the anti-shuffling the provision.

sought to have the charges against him dismissed, claiming that the State was obligated to dispose completely of the charges against him before returning him to Lorton.

We rejected Jefferson's claim that the State violated the anti-shuffling provision because the detainer in his case was *resolved* with a District Court conviction against Jefferson. *Jefferson*, 319 Md. at 683, 574 A.2d at 922. Returning Jefferson to Virginia after the District Court trial did not run afoul of the anti-shuffling provisions because the District Court trial is complete unto itself. *Id.* at 682, 574 A.2d at 921. Thus, in the words of the statute, "trial [was] had" before Jefferson was returned to Lorton. *See* Md.Code (1957, 1996 Repl.Vol.) Art. 27, § 616E(e). We noted in *Jefferson:*

> [T]he original detainer lodged against Jefferson informing Lorton that he was facing charges in Maryland was removed once his District Court trial ended in conviction; thereafter, a second detainer had to be issued to inform Lorton that Jefferson was wanted for his de novo appeal.

*Id.* at 683–84, 574 A.2d at 922.

 As we established in *Jefferson*, the District Court trial represents a complete and discrete proceeding. Stone's District Court trial extinguished the detainer based on the charges tried in that proceeding. *See Jefferson*, 319 Md. at 682–83, 574 A.2d at 922. The only detainer the State filed in this case referred specifically to the District Court charges. Without a second detainer lodged against him, Pennsylvania understandably took the position that Stone had no authority under the I.A.D. to request a resolution of the matter pending in the circuit court. *See State v. Newman*, 117 R.I. 354, 367 A.2d 200, 202 (1976) (holding that defendant could not invoke speedy trial provisions of the I.A.D. when the receiving state had never filed a detainer against him). As the record reflects, Stone's efforts to invoke the provisions of the I.A.D. were unavailing. Stone *attempted* to trigger the provisions under the I.A.D. that would have allowed him to be transported to Maryland. His attorney advised him to file a new set of I.A.D. forms, and Stone attempted to comply. Stone's efforts,

however, were unsuccessful because Pennsylvania apparently took the position that there was no active detainer for purposes of the I.A.D. lodged against him and that the District Court detainer had been removed as a result of his District Court conviction. *Cf. Jefferson,* 319 Md. at 683–84, 574 A.2d at 922.

Petitioner dutifully filed the appropriate forms under the I.A.D. in the first instance, and he was transported to Maryland for his trial in the District Court. The detainer that had been lodged was thereby satisfied. Following Stone's conviction and sentencing in Maryland, the Maryland authorities returned him to prison in Pennsylvania. The documents in his prison file suggest that no matter how diligently he pursued his rights under the I.A.D., he could not have invoked the benefits of the I.A.D. that would have triggered his transportation to Maryland for his de novo appeal.

## B.

Because a trial de novo in circuit court occupies a unique position as both a trial and an appeal, the consequences of a dismissal are different than the consequences of dismissal of charges in an original trial. *See* Maryland Rule 7–112(b) (providing that District Court judgment remains in effect pending circuit court appeal). Upon completion of the Pennsylvania sentence, Stone would be transferred to Maryland to serve his District Court sentence. Whereas dismissing the case in an original trial may benefit the defendant, the dismissal of Stone's de novo appeal in the circuit court denied Stone his statutory right to appeal his District Court judgment.

Our sister states that also provide for a two-tiered trial court system similarly have held that a defendant's failure to appear through no fault of his own is not a basis to dismiss the appeal. For example, the Supreme Judicial Court of Massa-

chusetts [9] has held that a defendant cannot be found to have failed to appear for her de novo appeal [10] when she had not received notice of the trial in superior court. *Commonwealth v. Francis*, 374 Mass. 750, 374 N.E.2d 1207 (1978). In *Francis*, the clerk of the court sent the trial date notice to an incorrect address, and as a result, the defendant failed to appear on the designated trial date. The trial court dismissed the appeal. The Supreme Judicial Court reversed, holding that when the Commonwealth did not prove that notice of the trial date was sent to defendant's address of record, her absence could not be considered as a failure to appear. Hence, her appeal was improperly dismissed. *Id.* 374 N.E.2d at 1206.

In sum, we conclude that Stone did not voluntarily fail to appear nor did his failure to appear result from his own inaction. The failure of the State to lodge a detainer or to otherwise provide for Stone's appearance in Maryland should not defeat his right to his appeal. Dismissal of his appeal was error.

*JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REINSTATE APPEAL. COSTS TO BE PAID BY WORCESTER COUNTY.*

---

**9.** As of January 1, 1994, Massachusetts abolished its two-tier system. 1993 Mass. Acts ch. 12, § 9; 1992 Mass. Acts ch. 379, §§ 193, 226.

**10.** In Massachusetts, the statute provides that if a defendant fails to appear for his trial de novo, he shall be defaulted on his recognizance and the sentence of the district court may be imposed upon him as if he had been convicted in the superior court. *Commonwealth v. Bartlett*, 374 Mass. 744, 374 N.E.2d 1203, 1204 (1978).