78 A.3d 399

**Joseph MOBUARY**

v.

**STATE of Maryland.**

**No. 27, Sept. Term, 2011.**

Court of Appeals of Maryland.

Oct. 24, 2013.

418

Brian M. Saccenti, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Edward J. Kelley, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BELL *, and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BELL, C.J. (Retired).

We granted certiorari in this case to consider whether a circuit court commits reversible error when, based solely on secondhand information from an unidentified source indicating that an incarcerated defendant refused to be transported from the correctional facility, it dismisses the appeals of that defendant when he failed to appear in court and, subsequently, refuses to reinstate those appeals despite contradictory information, the source of which was the defendant, suggesting that the information on which the decision to dismiss the appeals relied was unreliable. We shall answer this question in the affirmative. Accordingly, we shall reverse the judgment of the Circuit Court for Baltimore City.

## I.

The petitioner, Joseph Mobuary, was convicted in the District Court of Maryland, sitting in Baltimore City, of second degree assault in two cases. Subsequently sentenced, in each case, to three years imprisonment, with all but time served suspended, and placed on probation, the petitioner appealed both convictions to the Circuit Court for Baltimore City. The petitioner, who was incarcerated at the Baltimore City Detention Center, was not transported to court on December 21,

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

2010, the date on which he was scheduled to appear for his appeals. Upon calling the petitioner's case, the prosecutor informed the judge that it was her "understanding, from speaking to the corrections officer, that Mr. Mobuary refused to be transported today," and moved to dismiss the appeals. Counsel for the petitioner, an Assistant Public Defender, confirmed that report, telling the judge that he had received the same information from the correctional officer, but informed the court that otherwise he would prefer to remain silent. The trial judge dismissed the petitioner's appeals.

Soon thereafter, on the same day, the petitioner telephoned his defense counsel's supervisor from the detention center and told him that he had not refused to be transported to court, and that he was still intent on pursuing his appeals. Immediately upon receiving this information, defense counsel notified the trial judge and requested a continuance of the case until the following day. This request was denied.

On the following day, the petitioner's counsel filed, on behalf of the petitioner, a Motion to Reinstate Appeal. The motion, in pertinent part, advised the Circuit Court that,

"On December 21, 2010, Mr. Mobuary was not transported from the Baltimore City Detention Center. The Correctional Officer assigned to The Honorable Kendra Ausby's Courtroom was informed that Mr. Mobuary was not transported because he refused to come to Court.

"The Court relying on this information dismissed Mr. Mobuary's appeals . . .

"Around 1:00 p.m. on December 21, 2010, Mr. Kirk Osborn, Assistant Public Defender, received a telephone call from Mr. Mobuary from the Baltimore City Detention Center. Mr. Mobuary advised he did not refuse to come to court and was adamant that he wanted to pursue his appeals.

"Immediately after hearing this information, Defense Counsel notified the Honorable Judge Kendra Ausby's chambers of Mr. Mobuary's intentions and asked to have the cases continued until the next day December 22, 2010. The Court respectfully denied this request."

Additionally, prior to the issuance of the trial judge's decision on the Motion to Reinstate Appeal, the petitioner, in a handwritten letter, dated December 21, 2010, and received by the judge's chambers on January 3, 2011, provided his side of the issue:

"I, Joseph Mobuary respectfully ask that I be brought to court on the appeals that I put in for on cases 310273003 and 310273004. I was on the transport list to be transported to court on December 21st, 2010 and Central Booking did not transport me. I spoke to my fiancée who was in the courtroom today and she said my case was dismissed because the states [sic] attorney said that the C.O.s said I refused to be transported. I did not refuse to be transported. With all due respect your honor I am incarcerated and you do not have the freedom of choice in here. You do what you are told or they make you do it. I did not and would not have refused to come to court on the appeals. I asked for these appeals so I could clear my name. I do not understand why the public defender did not at least ask for a postponement to speak to me and find out why I was not transported there. I was waiting to be transported to court and I was not. If I could have taken myself there I would have been there. Please your honor put in another court date for my appeals so, I can come to court and clear up these matters."

The trial judge issued an order denying the Motion to Reinstate Appeal on January 31, 2011.

The petitioner then filed in this Court a petition for the issuance of a writ of certiorari. In the petition, the petitioner posed the following question:

"Did the circuit court commit reversible error in denying [Mr. Mobuary]'s motion to reinstate his *de novo* appeals from district court convictions, where (a) the court dismissed the appeals based merely on counsel's assertion that a correctional officer said [Mr. Mobuary] refused to be transported to court from the detention center, (b) defense counsel subsequently learned and informed the court that [Mr. Mobuary] denied refusing to come to court and wanted

to proceed with his appeals, and (c) the court applied the wrong legal standard in ruling on [Mr. Mobuary]'s motion to reinstate his appeals?"

We granted the petition. *Mobuary v. State,* 420 Md. 81, 21 A.3d 1063 (2011). As indicated previously, we shall answer this question in the affirmative and hold that the Circuit Court erred in dismissing the petitioner's Motion to Reinstate Appeal.

## II.

The petitioner proffers three arguments in support of his position. One of his arguments challenges the propriety of the court's dismissal of his appeals and the other two relate to the correctness of the ruling to deny reinstatement of those appeals.

First, with regard to the dismissal of his appeals, he argues that the Circuit Court erred in relying on unreliable information as the basis for doing so. The source of the information, that the petitioner refused to be transported to court, conveyed by the prosecutor and confirmed by the petitioner's counsel, was an unidentified correctional officer. He relies on *Stone v. State,* 344 Md. 97, 106, 685 A.2d 441, 445 (1996), in which this Court applied the rules applicable to a defendant's right to be present at trial to a *de novo* trial appearance, and *Grant v. State,* 414 Md. 483, 486–87, 995 A.2d 975, 977 (2010), in which we disapproved of the use of information "wholly outside the trial court's record" as an appropriate basis for the exercise of discretion.

In her order denying the petitioner's motion to reinstate his appeals, the trial judge cited Maryland Rule 4–345 [1] as the

---

1. Maryland Rule 4–345 provides:

"(a) *Illegal Sentence.* The court may correct an illegal sentence at any time.

"(b) *Fraud, Mistake, or Irregularity.* The court has revisory power over a sentence in case of fraud, mistake, or irregularity.

"(c) *Correction of Mistake in Announcement.* The court may correct an evident mistake in the announcement of a sentence if the correc-

basis for the ruling. Noting that his motion did not invoke that Rule, which applies only to the court's revisory power over sentencing, the petitioner maintains that the trial court used the wrong standard to deny his motion.[2] Aware of the presumption that attends a judge's ruling, that he or she "knows the law and applies it properly," *Thornton v. State,* 397 Md. 704, 736, 919 A.2d 678, 697 (2007), he emphasizes that the presumption is rebuttable, *id.,* and that the trial judge clearly cited the wrong rule, one employing a different standard. Therefore, the petitioner argues that the judge's failure to apply the correct legal standard requires reversal. *See Williams v. State,* 173 Md.App. 161, 165, 917 A.2d 1213, 1215–16 (2007) ("We shall ... vacate the judgments ... because the circuit court erroneously interpreted the statute and applied the wrong legal standard.").

In any event, the petitioner finally contends, his Motion to Reinstate Appeal, coupled with his letter to the trial judge,

---

tion is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

"(d) *Desertion and Non-support Cases.* At any time before expiration of the sentence in a case involving desertion and non-support of spouse, children, or destitute parents, the court may modify, reduce, or vacate the sentence or place the defendant on probation under the terms and conditions the court imposes.

"(e) *Modification Upon Motion.*

"(1) *Generally.* Upon a motion filed within 90 days after imposition of a sentence (A) in the District Court, if an appeal has not been perfected or has been dismissed, and (B) in a circuit court, whether or not an appeal has been filed, the court has revisory power over the sentence except that it may not revise the sentence after the expiration of five years from the date the sentence originally was imposed on the defendant and it may not increase the sentence."

2. Petitioner argues that the correct standard is found in Rule 7–112(f)(3), which provides:

"On motion filed in the circuit court within 30 days after entry of a judgment dismissing an appeal, the circuit court, for good cause shown, may reinstate the appeal upon the terms it finds proper. On motion of any party filed more than 30 days after entry of a judgment dismissing an appeal, the court may reinstate the appeal only upon a finding of fraud, mistake, or irregularity. If the appeal is reinstated, the circuit court shall notify the District Court of the reinstatement and request the District Court to return the file."

provided good cause for reinstatement of his appeals. Supporting that contention, the petitioner asserts, are the definition of "good cause" that this Court has adopted, *see In re Robert G.*, 296 Md. 175, 179, 461 A.2d 1, 3 (1983); BLACK'S LAW DICTIONARY 623 (5th ed.1979), and the liberal construction to which this Court has said Rule 7–112(f)(3) is entitled. *See Pollard v. State*, 339 Md. 233, 240, 661 A.2d 734, 737 (1995). He also relies on *Kim v. State*, 770 So.2d 1114 (Ala.Crim.App.2000), in which the explanation for a defendant's failure to appear, contained in a motion to reinstate an appeal and consisting of a lawyer's assertion that he had been misinformed as to the circumstances under which notice of the new trial date would be given, was accepted as good cause.[3]

The State does not agree. As a threshold matter, the State contends that this Court does not have jurisdiction to review the matter *sub judice*. Its argument in support of this contention relies on three provisions of the Courts & Judicial Proceedings Article ("CJ"):[4] § 12–305,[5] pursuant to which

---

3. In his reliance on *Kim v. State*, 770 So.2d 1114 (Ala.Crim.App.2000), the petitioner notes that the State of Alabama has a two-tier trial court system similar to Maryland's. In Alabama's system, a defendant convicted in the district court is afforded a *de novo* appeal to the circuit court. Additionally, Alabama law provides that the circuit court may dismiss an appeal if the defendant does not appear for the *de novo* trial, but within thirty days of the dismissal, the circuit court may set aside the order of dismissal and reinstate the appeal for good cause shown. *See Kim*, 770 So.2d at 1115 (citing Ala.Code § 12–12–70(e) (1975); Ala. R.Crim. P. 30.5).

4. Unless otherwise indicated, all references are to Maryland Code (1973, 2006 Repl.Vol., 2011 Cum.Supp.)

5. CJ § 12–305 provides:

"The Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court has rendered a final judgment on appeal from the District Court or has rendered a final judgment on appeal from an administrative decision under Title 16 of the Transportation Article if it appears to the Court of Appeals, upon petition of a party that:
　"(1) Review is necessary to secure uniformity of decision, as where the same statute has been construed differently by two or more judges; or

this Court has jurisdiction to review "any case in which a circuit court has rendered a final judgment on appeal from the District Court ..."; § 12–307,[6] pursuant to which this Court may "review a case or proceeding pending in or decided by the Court of Special Appeals ...," as well as "a case or proceeding decided by a circuit court, in accordance with § 12–305 ..."; and § 12–308,[7] pursuant to which, subject to § 12–307, the Court of Special Appeals has "exclusive initial appellate jurisdiction over any reviewable judgment, decree, order or other action of a circuit court, and an orphans' court." The State argues:

> "[T]he judgment of the District Court became final when [petitioner's] appeals were dismissed, and the separate ruling of the circuit court denying the motion to reinstate the dismissed appeals is a final order of the circuit court subject to review only by direct appeal to the Court of Special Appeals."

Stated differently, the State submits that the Circuit Court's decision denying reinstatement of the dismissed appeals was not a final judgment within the ambit of § 12–305, it was not a final judgment on an appeal from the District Court, only its prior decision to dismiss the appeals was such a final judg-

---

"(2) There are other special circumstances rendering it desirable and in the public interest that the decision be reviewed."

6. CJ § 12–307 provides:
 "The Court of Appeals has:
 "(1) Jurisdiction to review a case or proceeding pending in or decided by the Court of Special Appeals in accordance with Subtitle 2 of this title;
 "(2) Jurisdiction to review a case or proceeding decided by a circuit court, in accordance with § 12–305 of this subtitle; and
 "(3) Exclusive appellate jurisdiction with respect to a question of law certified to it under the Uniform Certification of Questions of Law Act."

7. CJ § 12–308 states:
 "Except as provided in § 12–307 of this subtitle, the Court of Special Appeals has exclusive initial appellate jurisdiction over any reviewable judgment, decree, order or other action of a circuit court, and an orphans' court."

ment, and therefore only it could be the subject of a writ of certiorari. The State explains:

"Mobuary's appeals from his District Court judgments were dismissed by the circuit court on December 21, 2010, ... and Mobuary did not file a motion for new trial pursuant Rule 4–331(a).... Thus a petition for writ of certiorari seeking review of the dismissal of the appeals was required to be filed in this Court by January 20, 2011. Md. Rule 8–302(b) [8] Mobuary did not file his petition for a writ of certiorari until March 2, 2011. Mobuary's motion to reinstate his appeals, which was filed on December 22, 2010, and remained pending until February 1, 2011, did not stay the time for filing a petition for a writ of certiorari from the judgment entered on December 21, 2010. *See* Md. Rule 8–302(b). Under the circumstances, the judgment of the circuit court dismissing Mobuary's appeals is not properly before this Court."

Thus, the State asserts, the Circuit Court judgment on the motion to reinstate the appeals was not a "final judgment on appeal from the District Court," as provided by CJ § 12–305, but, rather, a separate judgment of the Circuit Court, within the contemplation of, and subject to, § 12–308.

---

8. Maryland Rule 8–302(b) provides:

"(b) *From Appeal to Circuit Court.* If a writ of certiorari is sought pursuant to Code, Courts Article, § 12–305, a petition may be filed not later than 30 days after entry of the judgment of the circuit court, except as follows:

"(1) In a criminal action, when a timely motion for a new trial is filed pursuant to Rule 4–331(a), the petition for a writ of certiorari shall be filed within 30 days after the later of (A) entry of the judgment or (B) entry of a notice withdrawing the motion or an order denying the motion.

"(2) In a civil action tried de novo in the circuit court, when a timely motion is filed pursuant to Rule 2–533 or 2–534, the petition for a writ of certiorari shall be filed within 30 days after entry of (A) a notice withdrawing the motion or (B) an order denying a motion pursuant to Rule 2–533 or disposing of a motion pursuant to Rule 2–534. A petition for a writ of certiorari filed before the withdrawal or disposition of either of these motions has no effect, and a new petition must be filed within the time specified in this section."

On the merits, noting that Maryland Rule 7–112(f)(1) mandates that a trial court "dismiss an appeal if the appellant fails to appear as required for trial or any other proceeding on the appeal," the State argues that the trial court had no choice but to dismiss the appeals once the petitioner did not appear and "there was nothing before the court to justify his absence." It is not bothered by the facts that the information on which the court acted was from an unidentified corrections officer and was secondhand, explaining that the information was undisputed and the petitioner's counsel did not oppose the State's motion to dismiss the appeal. *Stone* is distinguishable, it says, because, there, unlike here, the court was "made aware of Stone's desire to proceed on his appeal and his attempt to secure transportation to his scheduled trial date." *See Stone,* 344 Md. at 102–03, 685 A.2d at 443.

With respect to the motion to reinstate the appeals, the State is satisfied both that the court applied the appropriate standard of review and did not abuse its discretion in denying the motion. As to the former, the State does not believe that the presumption that the trial court knew the law and applied it properly was negated by the record. It finds support for this view in the court's recognition of the nature of the relief the petitioner sought, the reinstatement of appeals, which is provided for in Rule 7–112, and not Rule 4–345, stating the fact that the trial court did not sentence the petitioner, and in the fact that the petitioner did not invoke Rule 4–345 in his motion. From all of the above, the State concludes that the record does not establish, and certainly not clearly so, "that the court somehow confused or conflated Rule 4–345 with Rule 7–112, or that the court otherwise applied the wrong legal standard to Mobuary's request to reinstate his appeals."

The State's argument that the trial court did not abuse its discretion in denying the motion to reinstate the appeals is premised on its own conclusion that the petitioner's motion and the letter that he wrote in support failed to meet the "good cause" threshold. In its view, those submissions, which "cited no legal authority," were nothing more than " 'insufficiently reliable off-the-record,' after-the-fact and unsupported

allegations that Mobuary did not wilfully fail to appear for his scheduled trial date." It contrasts the motion in the case *sub judice* with that in *Kim*, 770 So.2d 1114, on which the petitioner heavily relies, by noting that, in Kim, the motion contained a "comprehensive and verifiable explanation" by an officer of the court for the defendant's failure to appear, while, in the present case, the motion was a mere reiteration of the petitioner's "self-serving" explanation.

### III.

Prior to reaching the jurisdictional issue and the question presented by this appeal, we will revisit an issue, previously addressed by this Court, which is relevant to, indeed, instructive in, the resolution of this case, the significance of the "two-tiered trial court system that provides for trial de novo on appeal to the general jurisdiction trial court," *Stone*, 344 Md. at 104, 685 A.2d at 444, and its operation in the appellate process in Maryland. Addressing these issues in *Stone*, we said:

> "A defendant convicted in the District Court may appeal to the circuit court for a trial de novo. *See* Md.Code (1974, 1995 Repl.Vol., 1996 Cum.Supp.) § 12–401(f) of the Courts and Judicial Proceedings Article (an appeal from District Court to circuit court shall be tried de novo). The trial de novo in circuit court proceeds on the original District Court charging document, *Lewis v. State*, 289 Md. 1, 4–5, 421 A.2d 974, 977 (1980), and the District Court judgment remains in effect pending the appeal to the circuit court, unless and until superseded by a judgment of the circuit court or a disposition by *nolle prosequi* or stet. Maryland Rule 7–112; *see Stanton v. State*, 290 Md. 245 [246], 428 A.2d 1224 [1225] (1981). De novo appeals, however, are treated 'as wholly original proceedings, that is, as if no judgment had been entered in the lower court.' *Hardy v. State*, 279 Md. 489, 493, 369 A.2d 1043 [1046] (1977). Thus, under the Maryland scheme, the circuit court proceeding occupies a unique position as both an appeal and a trial. Because the District Court judgment remains in effect after a circuit court appeal has been dismissed, dismissal of the appeal has

different consequences than the dismissal of charges in an original trial. Dismissal of the charges in an original trial often benefits the defendant, particularly when the charges are dismissed with prejudice. Dismissal of the circuit court appeal, on the other hand, deprives the appellant of his right to appeal a District Court judgment as guaranteed by statute in Maryland."

*Stone,* 344 Md. at 104–05, 685 A.2d at 444 (footnote omitted).[9]

Because *de novo* appeals proceed in the Circuit Court as a trial, we found our cases addressing the defendant's right to be present at trial, mostly trial in absentia cases, instructive. *Stone,* 344 Md. at 106, 685 A.2d at 445 (citing *Walker v. State,* 338 Md. 253, 261, 658 A.2d 239, 242 (1995), in turn quoting Maryland Rule 4–231(c)(3) (the right to be present is waived whenever the defendant, "personally or through counsel, agrees to or acquiesces in being absent")); *Stewart v. State,* 334 Md. 213, 224, 638 A.2d 754, 759 (1994) ("Maryland has long recognized the common law right of a defendant to be present at trial."); *Barnett v. State,* 307 Md. 194, 210, 512 A.2d 1071, 1079 (1986) (quoting *United States v. Tortora,* 464 F.2d 1202, 1209 (2d Cir.1972)) ("Before a trial may proceed in the defendant's absence, the judge must find that the defendant has had adequate notice of the charges and proceedings against him ... It must clearly appear in the record ... that the defendant was advised when proceedings were to commence and that he voluntarily, knowingly, and without justification failed to be present at the designated time and place before the trial may proceed in his absence."). *See also Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970) (citing *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right

---

**9.** In that footnote, we noted what we said in *State v. Jefferson,* 319 Md. 674, 682, 574 A.2d 918, 921 (1990): "[T]he District Court trial is complete unto itself. It does not act as a preliminary proceeding to a possible de novo appeal. Nor does the de novo appeal 'wipe the slate clean.'" *Stone v. State,* 344 Md. 97, 105 n. 5, 685 A.2d 441, 444 n. 5 (1996).

to be present in the courtroom at every stage of his trial."). Those cases reflected the requirements necessary to waive the right to be present at trial, as prescribed by Maryland Rule 4–231,[10] that is, a defendant must have: failed to appear voluntarily, engaged in disruptive conduct in the courtroom, or, personally or through counsel, agreed to or acquiesced in his absence from the trial. Maryland Rule 4–231(c). Accordingly, while acknowledging that "when a defendant fails to appear at the designated time and place, and there is nothing before the court to justify the defendant's absence, it is proper to presume that the defendant has withdrawn the appeal," *Stone*, 344 Md. at 106, 685 A.2d at 445 (citing Maryland Rule 7–112(d)), we were clear, "the right to be present at a trial de novo cannot be considered waived by non-appearance, that is, withdrawn, when the trial court has information that the

---

**10.** Maryland Rule 4–231, as relevant, provides:

"(a) *When Presence Required.* A defendant shall be present at all times when required by the court. A corporation may be present by counsel.

"(b) *Right to be Present—Exceptions.* A defendant is entitled to be physically present in person at a preliminary hearing and every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4–247 and 4–248.

"(c) *Waiver of Right to be Present.* The right to be present under section (b) of this Rule is waived by a defendant:

"(1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or

"(2) who engages in conduct that justifies exclusion from the courtroom; or

"(3) who, personally or through counsel, agrees to or acquiesces in being absent."

We have long recognized the right of a defendant to be present at trial. *Hughes v. State*, 288 Md. 216, 221, 421 A.2d 69, 72 (1980) and acknowledged the origins of the right, stating:

"The right to be present at trial is a common law right guaranteed by Article 5 of the Maryland Declaration of Rights, and is also 'to some extent protected by the Fourteenth Amendment to the United States Constitution, and is guaranteed by Maryland Rule [4–231].'"

*Pinkney v. State*, 350 Md. 201, 209, 711 A.2d 205, 209 (1998) (citing *Bunch v. State*, 281 Md. 680, 683–84, 381 A.2d 1142, 1144 (1978), and quoting *Williams v. State*, 292 Md. 201, 211, 438 A.2d 1301, 1306 (1981)).

appellant's failure to appear was neither wilful nor voluntary."
*Id.*

We further explained the nature of the test for waiver of non-appearance and its ramifications in *Pinkney v. State,* 350 Md. 201, 711 A.2d 205 (1998), a case in which the propriety of trying a defendant *in absentia* was the issue. There, we instructed, in order for a court to find that a defendant has waived or forfeited his or her right to be present, "the court must generally be satisfied of two primary facts: that the defendant was aware of the time and place of trial, and that the non-appearance was both knowing and sufficiently deliberate to constitute an agreement or acquiescence to the trial court proceeding in his or her absence." *Id.* at 215–16, 711 A.2d at 212. In making that determination, we explained, "[a] court cannot presume waiver from a silent record," *id.* at 217, 711 A.2d at 213 (citing *State v. Collins,* 265 Md. 70, 80, 288 A.2d 163, 168 (1972)); *see Haley v. State,* 40 Md.App. 349, 361, 392 A.2d 551, 557, *cert. denied,* 284 Md. 744 (1978) ("[V]oluntary absence must be clearly established and will not be presumed."), so that, upon review of the proceedings, it must appear that an "adequate inquiry [was] made to ensure that a defendant's absence [was] not in fact involuntary." *Id.* at 217, 711 A.2d at 213. Thus, without "set[ting] forth a litany which the trial court must slavishly follow in order to establish that a defendant's absence is knowing and voluntary," we held that the trial court must "prudently take[ ] investigatory measures before finding a waiver of the right to be present at trial." *Id.* at 216–17, 711 A.2d at 213. We also concluded that, if, instead of taking investigatory measures, "the trial court presumes waiver from a virtually silent record, and thus consciously proceeds in ignorance, then a lack of alternative explanations as to the defendant's presence at the time of trial cannot support the finding of a knowing and voluntary waiver of the right to be present." *Id.* at 217, 711 A.2d at 213.

### A.

▮▮▮ With these principles in mind, we proceed to address the issues the parties present. The Rule applicable to this case is Maryland Rule 7–112(f). It provides:

"(f) Dismissal of Appeal; Entry of Judgment.

"(1) An appellant may dismiss an appeal at any time before the commencement of trial. The court shall dismiss an appeal if the appellant fails to appear as required for trial or any other proceeding on the appeal.

"(2) Upon the dismissal of an appeal, the clerk shall promptly return the file to the District Court. Any statement of satisfaction shall be docketed in the District Court.

"(3) On motion filed in the circuit court within 30 days after entry of a judgment dismissing an appeal, the circuit court, for good cause shown, may reinstate the appeal upon the terms it finds proper. On motion of any party filed more than 30 days after entry of a judgment dismissing an appeal, the court may reinstate the appeal only upon a finding of fraud, mistake, or irregularity. If the appeal is reinstated, the circuit court shall notify the District Court of the reinstatement and request the District Court to return the file.

"(4) If the appeal of a defendant in a criminal case who was sentenced to a term of confinement and released pending appeal pursuant to Rule 4–349 is dismissed, the circuit court shall (A) issue a warrant directing that the defendant be taken into custody and brought before a judge of the District Court or (B) enter an order that requires the defendant to appear before a judge. If a judge is not available on the day the warrant or order is served, the defendant shall be brought before a judge the next day that the court is in session. The warrant or order shall identify the District Court case by name and number and shall provide that the purpose of the appearance is the entry of a commitment that conforms to the judgment of the District Court."

Thus, although the court is required to dismiss an appeal when the defendant does not appear, Rule 7–112(f)(1), it may reinstate the appeal, on the motion of the defendant, filed

within 30 days of the dismissal, if the defendant makes a showing of good cause for doing so. Rule 7–112(f)(3).

A defendant's right to appeal is prescribed by CJ § 12–301: "Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment."

The time for filing an appeal is prescribed by Maryland Rule 8–202, and it is, "[e]xcept as otherwise provided in this Rule or by law, within 30 days after entry of the judgment or order from which the appeal is taken."

■ To be sure, there is an exception to the thirty day time limit for filing an appeal. A timely motion for new trial, filed in a criminal case, extends the time for appeal. Maryland Rule 4–331(a) permits a defendant, "within ten days after a verdict," to move and the trial court, "in the interest of justice, [to] order a new trial," and Maryland Rule 8–302(b) requires that a petition for certiorari, in a criminal case, be filed within 30 days of the entry of verdict or the ruling on the motion for new trial. No such motion for new trial was filed in this case, and so, as the State posits, the time for appeal of the dismissal of the appeals was not extended pursuant to Maryland 4–331. We agree.

Rule 4–331, clearly, does not apply to this situation. Rule 4–331 applies to the situation in which the merits of a trial are being challenged. It does not apply when the issue is the propriety of the dismissal of an appeal for a defendant's failure to appear, or the denial of a defendant's motion for reinstatement of the appeal. This is made clear by the definition of "verdict." Maryland Rule 4–102 provides: "(*l*) Verdict. 'Verdict' means the finding of the jury or the deci-

sion of the court pertaining to the merits of the offense charged." That Rule 4–331 does not apply, however, does not mean that Rule 8–302(b)'s timing provision is inapposite.

The question of whether an appeal has properly been dismissed is a separate and distinct question from whether the decision to deny its reinstatement was the appropriate exercise of discretion, in the same way that a merits appeal is different from one challenging the trial judge's exercise of discretion to grant a new trial. We have said that " '[A] final judgment' is one that 'either determine[s] and conclude[s] the rights of the parties involved or den[ies] a party the means to prosecut[e] or defend[ ] his or her rights and interests in the subject matter of the proceeding.' " *Douglas v. State,* 423 Md. 156, 171, 31 A.3d 250, 259 (2011) (quoting *In re Billy W.,* 386 Md. 675, 688, 874 A.2d 423, 431 (2005) (quotation omitted)). See BLACK'S LAW DICTIONARY 919 (9th ed. 2009) (A final judgment is "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy . . ."). A decision to dismiss an appeal, because it "determines and concludes" the party's rights, is a final judgment, which is appealable, when rendered. Accordingly, like the merits and a motion for new trial, the dismissal and motion to reinstate may be considered and appealed separately. It is significant, therefore, that, unlike in the case of motions for new trial, there is no exception made in Maryland Rule 8–302 for motions to reinstate appeals. The petitioner, as we have seen, did not file an appeal to challenge the dismissal of his appeals, which he could have done within 30 days of the court's ruling dismissing them. Instead, he waited for the ruling on the motion to reinstate and filed the appeal. In so doing, the petitioner preserved that appeal, but not the issue of the propriety of the dismissal.[11]

---

11. Even were the issue preserved, the record is clear that the trial court did not presume waiver from a silent record. It had information bearing on the reason for the petitioner's non-appearance, but it had no information, when it dismissed the appeals, that the petitioner's failure to appear was neither wilful nor voluntary. *See Stone,* 344 Md. at 106, 685 A.2d at 445. In fact, the information that it had was that the

## B.

The petitioner, as we have seen, argues that his motion, coupled with the letter he submitted following the dismissal of his appeals, demonstrated the good cause mandated by Maryland Rule 7–112(f)(3), on the basis of which the trial court was required to reinstate his appeals. As a result, he submits, the trial court erred when it denied his motion. We agree.

The question this issue requires this Court to answer is whether the trial court, in denying the petitioner's motion to reinstate his appeals, abused its discretion. *See Pollard,* 339 Md. at 240, 661 A.2d at 737 ("[T]he trial court does have discretion to reinstate a criminal appeal."); *Goodman v. Commercial Credit Corp.,* 364 Md. 483, 491–92, 773 A.2d 526, 531 (2001) ("Where the decision or order of the trial court is a matter of discretion it will not be disturbed on review except on a clear showing of abuse of discretion."). With regard to the standard to be employed in assessing a trial judge's exercise of discretion, we have instructed:

"The abuse of discretion standard requires a trial judge to use his or her discretion soundly and the record must reflect the exercise of that discretion. Abuse occurs when a trial judge exercises discretion in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law ... The conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge and an appellate court should in no case interfere with that judgment unless there has been an abuse of discretion by the trial judge of a character likely to have injured the complaining party."

---

petitioner's failure to appear was both wilful and voluntary, being a product of his own decision not to do so. To be sure, the quality of that information, being from an unnamed correctional officer, was not of the highest, and the investigation that preceded its acquisition, not very intense or targeted. Nevertheless, whether such a source of the information renders the information so unreliable as to be incapable of supporting a waiver finding must await a case when the issue not only has been raised but has timely been appealed.

*Kelly v. State*, 392 Md. 511, 531, 898 A.2d 419, 430 (2006) (internal citations omitted).[12]

Of course, critical to the abuse of discretion inquiry is the threshold question of whether the petitioner's motion contained sufficient information to constitute "good cause." As the petitioner points out, we have liberally construed the good cause requirement, in light of the history of Rule 7–112, which we interpreted as reflecting the Court's "intention to increase, rather than decrease, the remedy available under [the] Rule...." *Pollard*, 339 Md. at 240, 661 A.2d at 737.

In the case *sub judice*, we conclude, looking to the totality of facts and circumstances, that those facts known to the Circuit Court at the time of its denial of the petitioner's Motion to Reinstate Appeal, decidedly establishes a basis for finding good cause. To begin, it is readily apparent that the basis for the "finding" that the petitioner voluntarily and wilfully did not appear for his appeals was clearly a weak basis for dismissal, consisting only of unverified secondhand information. Upon being informed of the dismissal, on the same day, the petitioner contacted his counsel's supervisor and advised him that he did not refuse transport to court, and, in fact, was anxious to pursue his appeals. Also, that same day, the trial court was advised of the petitioner's position, that it contradicted the information with which the court earlier had been supplied, and was asked to postpone the case until the next day. When the request for postponement was denied, the petitioner filed his Motion to Reinstate Appeal and, subsequently, a letter reiterating his position, the denial of information on which the court acted, suggesting that there was a misunderstanding, and his desire to proceed with his appeals.

---

**12.** We have further explained:

"We will find an abuse of discretion when the ruling is clearly against the logic and effect of facts and inferences before the court, when the decision is clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result, when the ruling is violative of fact and logic, or when it constitutes an untenable judicial act that defies reason and works an injustice."

*Powell v. Breslin*, 430 Md. 52, 62, 59 A.3d 531, 537 (2013) (internal quotations omitted).

To be sure, there was not cited any legal authority, and besides denying that he refused transportation to court and reiterating a desire to prosecute the appeals, there was not any detail. The petitioner's submission, however, must be viewed, we believe, in context, and juxtaposed against the information that formed the basis for the decision sought to be reversed. So viewed, it is difficult to see what else he could have said. Moreover, as indicated, what the petitioner alleged must be viewed in light of the evidence upon which the court acted. While, on the petitioner's side of the ledger, all the court had was the petitioner's allegations, which were in his interest to make, on the other side of the ledger was only the secondhand hearsay of an unidentified correctional officer whose credibility could not be tested. At the very least there was good cause for a hearing, at which the petitioner's credibility could be tested.

*Kim,* on which the petitioner relies, is consistent. There, the applicable Rule provided:

"Where appellant, without sufficient excuse, does not appear for trial de novo when called for trial, the court may dismiss the appeal, order the bond forfeited, and remand the case to the court appealed from for enforcement of the lower court judgment; provided, however, that on motion of the appellant for good cause shown, the circuit court may, within thirty (30) days of the date of the order of dismissal, set the order of dismissal aside and reinstate the appeal on such terms as the circuit court may prescribe."

770 So.2d at 1115 (citing Ala. R.Crim. P. 30.5). In *Kim,* the appellant and his counsel did not appear for trial, after having been advised two days earlier that his case was "in the pool" and that notice would be given prior to the case being called. *Id.* Immediately upon learning of the dismissal of the appeal, the petitioner's counsel moved to reinstate the appeal, explaining:

"The appellant's case was set for docket call in the circuit court on December 6, 1999, at 9:00 a.m. Although the appellant was present, defense counsel was not because of a

conflict in her schedule. However, counsel had previously informed the circuit court of this conflict. At 1:30 p.m., counsel arrived and informed the court that the defense was ready to proceed to trial. Based on a discussion between the circuit judge and an attorney in another case, defense counsel believed that the other case would be called for trial first, that that case would begin at 12:00 p.m. on December 7, 1999, and that the case would take at least two days to try. The prosecutor told defense counsel that the appellant's case was 'in the pool.' When defense counsel asked the prosecutor if she would get notice ahead of time so that she could have all of her witnesses ready, he told her that she would."

*Id.* The court found that explanation to be evidence of good cause for the appellant's failure to appear. *Id.* at 1116. Because the appellant's counsel also failed to appear and, therefore, her statement of the reason for that failure was self-serving, we are not persuaded by the State's argument distinguishing that case from the one *sub judice.*

We are also persuaded, in any event, by the petitioner's additional argument, that the Circuit Court's denial of his motion should be reversed because, in so ruling, it applied the wrong legal standard. As we have seen, the court's order read:

"Upon consideration of Defendant's Motion to Reinstate Appeal, Pursuant to Maryland Rule 4–345, it is this 31st day of January, 2011, by the Circuit Court for Baltimore City, Part 24, hereby ORDERED that the Motion is DENIED."

Instead of Rule 4–345, which governs modifications of sentences, we have held that the applicable standard for dismissal and reinstatement of his appeals is that prescribed by Maryland Rule 7–112(f)(3), *supra.* We are not persuaded by the State's argument that, notwithstanding the reference in the court's order to Rule 4–345, which the State dismisses as simply "undeniably misplaced," "there is no clear evidence in this case that the trial court actually misunderstood the applicable law," so that the presumption afforded to trial judges—

that they know the law and apply it properly, *Thornton,* 397 Md. at 736, 919 A.2d at 697, applies and has not been rebutted.

 While it is true that "[o]rdinarily, we will presume that the trial judge knows the law and applies it properly ... [t]hat presumption ... is rebuttable." *Thornton,* 397 Md. at 736, 919 A.2d at 697 (citing *State v. Chaney,* 375 Md. 168, 184, 825 A.2d 452, 461 (2003)). Indeed, we have recognized that " '[t]he most fundamental principle of appellate review [ ] is that the action of a trial court is presumed to have been correct and the burden of rebutting that presumption is on the party claiming the error first to allege some error and then to persuade us that the error occurred.' " *Chaney,* 375 Md. at 183–84, 825 A.2d at 461 (quoting *Fisher v. State,* 128 Md.App. 79, 104, 736 A.2d 1125, 1138–39 (1999)). Consequently, "error is never presumed by a reviewing court, and we shall not draw negative inferences from [a] silent record." *Id.* at 184, 825 A.2d at 461. As indicated, however, this presumption in favor of a trial judge is rebuttable with proof of clear error by the judge, such as misstating or misapplying the law. *Id.*

In *Chaney,* we considered whether, on the record, the trial judge failed to recognize that he had the discretion to suspend all or a portion of the defendant's life sentence, and if so, whether that failure required a new sentencing proceeding. *Id.* at 174–75, 825 A.2d at 455. We first reasoned that the fact that the trial judge did not expressly state that he was aware of, and considered, his discretion to suspend part or all of the defendant's life sentence should not be interpreted as implying that he was unaware of that option. *Id.* at 179, 825 A.2d at 458. We warned that such an interpretation would "run[ ] afoul of the well-established principle that trial judges are presumed to know the law and to apply it properly." *Id.* (internal citations omitted). We further reasoned that such a presumption may be rebutted, but "the burden of rebutting that presumption is on the party claiming error first to allege some error and then to persuade us that that error occurred." *Id.* at 183–84, 825 A.2d at 461 (citing *Fisher,* 128 Md.App. at 104–05, 736 A.2d at 1138–39). We held that the appellant had failed to provide sufficient evidence to rebut the presumption

in favor of the trial court, and were persuaded by the record's indication that the trial judge correctly stated the applicable law. *Id.*

In the case sub *judice*, as in *Thornton*, however, the record indicates the exact opposite.[13] In *Thornton*, we sought to determine whether a trial judge correctly interpreted the elements of second-degree murder. 397 Md. at 709, 919 A.2d at 680. We recognized that, in those cases where we are to decide whether a trial judge incorrectly interpreted or applied the law, "[t]he only way to resolve that question is to examine what the trial judge said in reaching [its] result . . ." *Id.* at 736, 919 A.2d at 697. We applied that standard to the case, then at bar, and concluded, in light of the judge's incorrect legal conclusions, that the petitioner was entitled to a reversal of his conviction. *Id.* at 742, 919 A.2d at 700. We were persuaded by the trial court's misstatement of "the required *mens rea* for second-degree murder of the intent-to-do-grievous-bodily-harm type," *id.* at 737, 919 A.2d at 697,[14] and its "consisten[cy] with other comments the trial judge made while discussing the intent element of the crime." *Id.*[15]

---

13. That the petitioner did not seek a modification of sentence, only a reinstatement of his dismissed appeals for "good cause," militates against, rather than in favor of, the presumption, as the State suggests.

14. The misstatement that the Court identified was:
"[I]f subjectively he's thinking, yeah, he swings out and stabs him in the leg just to get him away but he dies, and he at no time had any intent to kill anybody . . . but he uses . . . [what] turns out to be serious bodily harm, even though that wasn't what he was after . . . I mean, isn't the law that you do something like that, the consequences are yours."
*Thornton v. State*, 397 Md. 704, 736, 919 A.2d 678, 697 (2007).

15. We explained:
"To the contrary, 'using what turns out to be serious bodily harm,' cannot serve as a substitute for intent to inflict grievous bodily harm. The intent to inflict grievous bodily harm is a life-threatening state of mind. Thus, in order to convict Thornton, the trier of fact was required to find that Thornton's desire or purpose was to inflict such harm that a reasonable person, under the circumstances, could or should have anticipated that death would likely occur. Consequently, Thornton cannot be held liable, under an objective standard, for the

The distinction between *Chaney* and *Thornton* is clear, and dispositive, in this case. While, in *Chaney,* the judge did not misstate the law, 375 Md. at 184, 825 A.2d at 461, in *Thornton,* and in this case, the judge did. 397 Md. at 742, 919 A.2d at 700.

Accordingly, for the reasons stated above, we hold that the Circuit Court erroneously denied the petitioner's Motion to Reinstate Appeal, and, therefore, that the case must be remanded for a determination of whether the petitioner's submissions constituted good cause for reinstating the appeals.

---

ultimate consequence of death, if death or serious bodily harm "wasn't what he was after." Later in his comments, while issuing a ruling as to his findings and conclusions of law, the trial judge stated:
'[W]e are called upon to be responsible for our actions and when you take a knife such as introduced into evidence as State's Exhibit 7 ... one knows that by thrusting that knife out, even though if it was in the leg, it was going to inflict serious bodily harm on whomever was struck and when you inflict serious bodily harm, one of the possible consequences or probable consequences rather, is death.'
"Here, the trial judge erred by substituting the notion of responsibility for one's actions and the act of stabbing the victim in the leg for knowledge that death would likely occur. First, use of the knife to stab Taylor in the leg does not necessarily mean that Thornton possessed the intent to inflict grievous bodily harm such that death would be the likely result. Moreover, in this case, no determination was made that the leg or any part of the leg constituted a vital part of the human anatomy or that intent was inferred from the manner in which the knife was used. Next, merely because Thornton may be blameworthy, because of the consequences of his actions, does not mean that he either had a desire to bring about those results or that those results were probable. The trial judge's explanation, above, on the issue of criminal responsibility does not support a finding that Thornton acted with the intent to inflict grievous bodily harm such that death would be the likely result. In addition, the trial judge's reasoning is inconsistent with his earlier determination that Thornton pulled the knife out 'expect[ing] [Taylor] to back off,' and because Taylor did not back off Thornton stabbed him in the leg. Likewise, that finding does not support a conclusion that Thornton stabbed Taylor with the intent to inflict grievous bodily harm. Essentially, the trial judge found that because Thornton caused the injury to Taylor and death resulted, Thornton was guilty of murder. This determination resulted in a presumption that Thornton intended the consequences of his actions and a modification of the *mens rea* requirement for specific intent-to-inflict-grievous-bodily-harm murder."
*Thornton,* 397 Md. at 737–38, 919 A.2d at 697–98.

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.