*Toni Tengeres v. State of Maryland*
No. 42, September Term 2020


**Criminal Procedure – Appeal from District Court to Circuit Court – Absence of Defendant – Dismissal and Reinstatement of Appeal.** A defendant who is convicted of criminal charges in the District Court may appeal to a circuit court for a trial *de novo*. If the defendant fails to appear for a proceeding in the circuit court and the court then dismisses the appeal under Maryland Rule 7-112(f) for failure to appear, the appeal may be reinstated for good cause if the defendant files a timely motion to reinstate. The decision whether to reinstate an appeal is addressed to the discretion of the circuit court, which is to consider the totality of the circumstances and apply the standard of good cause liberally to favor reinstatement of appeals.


**Criminal Procedure – Appeal from District Court to Circuit Court – Good Cause for Reinstatement of Appeal.** A defendant who had been convicted in the District Court timely appealed her conviction to the circuit court for a trial *de novo*. That trial was postponed in part due to the Covid-19 pandemic. A status hearing was held to re-schedule her case in anticipation of the resumption of normal court operations. The defendant failed to appear, and the circuit court dismissed the appeal. Given the totality of the circumstances, there was good cause to reinstate her appeal. It was undisputed that the defendant wished to pursue the appeal, that she had not received actual notice of the hearing until the day of the hearing, and that she had no immediate options that day for care of her young child and for transportation to the courthouse. In addition, the sole purpose of such status hearings was to determine which defendants wished to proceed to trial after the courts re-opened; a defendant could be excused from attending such a hearing by filing a one-page form with the court indicating an intention to proceed to trial.

Circuit Court for Washington County
Case No. C-21-CR-20-000012
Argument: February 5, 2021

IN THE COURT OF APPEALS
OF MARYLAND

No. 42

September Term, 2020

_____

TONI TENGERES

V.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: June 17, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Maryland has a two-tier trial court system for certain criminal offenses. Under that system, a defendant convicted in the District Court may appeal to the appropriate circuit court for a trial *de novo*. The defendant's failure to appear for the trial or other proceeding in the circuit court will result in dismissal of the appeal, unless the court grants a request to postpone that proceeding. If an appeal is dismissed because the defendant fails to appear, the defendant may move to reinstate the appeal. Such a motion is to be granted if there is "good cause" – a standard that past cases have held should be liberally applied.

Petitioner Toni Tengeres was convicted in the District Court in December 2019 for failing to send her child to school. She appealed that conviction to the Circuit Court for Washington County, which scheduled her case for a trial *de novo*. In early 2020, the Covid-19 pandemic forced the Circuit Court to postpone many criminal cases on its docket, including Ms. Tengeres' appeal for a trial *de novo*.

In an effort to re-schedule criminal cases delayed by the pandemic, the Circuit Court held status hearings in each case to assess which would be resolved without a trial and which needed to be scheduled for a bench or jury trial. Ms. Tengeres did not appear at her status hearing for reasons not disputed by the State – lack of actual notice until the day of the status hearing, when she had no immediate options for childcare or transportation to the courthouse.

During the status hearing, the Circuit Court denied her counsel's request for a brief postponement and, at the request of the State, dismissed her appeal. The court later denied her motion to reinstate her appeal and her motion to reconsider that denial, both without explanation.

This appeal concerns whether the Circuit Court correctly applied the "good cause" standard when it denied Ms. Tengeres' motion to reinstate her appeal. For the reasons discussed below, we hold that it did not, and we reverse and remand the case to the Circuit Court to reinstate Ms. Tengeres' appeal.

# I

# Background

## A. De Novo *Appeals from the District Court to Circuit Court in Criminal Cases*

### 1. *De Novo* Appeals in Criminal Cases

Like several other states, Maryland has a two-tiered trial court system with respect to certain criminal offenses. *See Stone v. State*, 344 Md. 97, 104-06 (1996). The District Court has original jurisdiction of misdemeanor offenses and certain felonies. Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §§4-301, 4-302. Upon conviction of such an offense in the District Court, a defendant may appeal to the circuit court, where the defendant is entitled to have a trial *de novo*. CJ §12-401(b)(2), (f); *see Oku v. State*, 433 Md. 582, 589-93 (2013).

This Court has adopted rules governing appeals from the District Court to a circuit court. Maryland Rules 7-100 *et seq*. Rule 7-112 outlines the procedures for an appeal to a circuit court for a trial *de novo*. Pertinent to this case, section (f) of that rule governs dismissal and reinstatement of such an appeal.

### 2. Dismissal and Reinstatement of Appeal When Appellant is Absent

Rule 7-112(f) provides that an appellant may dismiss an appeal for a trial *de novo* at any time. Maryland Rule 7-112(f)(1). In addition, the rule states that "[t]he court shall

dismiss an appeal if the appellant fails to appear as required for trial or any other proceeding on the appeal." *Id*.; *see also* Maryland Rule 7-114(b)(3) (dismissal of an appeal to be heard *de novo* is mandatory if appeal is "withdrawn" pursuant to Rule 7-112[1]). Nonetheless, the court has discretion to reinstate the appeal upon the filing of a timely motion to reinstate and a showing of "good cause." Maryland Rule 7-112(f)(3).

Cases construing the dismissal and reinstatement provisions of Rule 7-112(f) make clear that, although the rule appears to make dismissal mandatory whenever an appellant fails to appear for a proceeding, ultimately dismissal is only appropriate if the appellant's absence was willful or voluntary. *See Stone*, 344 Md. at 106. In addition, a motion to reinstate an appeal under the rule for good cause is to be liberally granted. *See Mobuary v. State*, 435 Md. 417 (2013).

## B. *Facts and Proceedings*

### 1. Charges and Trial in the District Court

On August 16, 2019, Ms. Tengeres was charged in the District Court of Maryland sitting in Washington County with failing to send her then-six-year-old child to his kindergarten on numerous dates during the 2018-2019 school year, in violation of

---

[1] The reference to an appeal being "withdrawn" pursuant to Rule 7-112 is apparently a holdover cross-reference to an earlier version of Rule 7-112, which used the verb "withdraw" to refer to an appellant's decision not to pursue an appeal and which stated that the appeal was "considered withdrawn" if the appellant failed to appear for a proceeding. An amendment to the rule adopted in 2007 in accordance with the 157th Report of the Standing Committee on Rules of Practice and Procedure amended this portion of Rule 7-112(f) to eliminate the references to "withdrawal" of an appeal in favor of the verb "dismiss." *See* 157th Report of the Standing Committee on Rules of Practice and Procedure (2006) at 62-63, available at https://perma.cc/3SNU-99SU.

Maryland Code, Education Article ("ED"), §7-301.[2]  At her initial appearance in the District Court on October 17, 2019, Ms. Tengeres asked for appointment of an attorney. An assistant public defender was assigned to represent Ms. Tengeres.

On December 18, 2019, the case came to trial in the District Court.  School records introduced by a school official revealed that Ms. Tengeres' son had been absent or tardy without excuse for more than half of the 2018-2019 school year.[3]  Ms. Tengeres testified on her own behalf at the trial.  Among other things, she said that she and her child had lived in seven or eight different places during that school year, including a homeless shelter and various motels.  She also stated that she had encountered various transportation issues in getting her son to school, as her grandmother's truck was no longer available and the school was unable to provide transportation for a time.  She further testified that she had been dealing with health issues, for which she was taking medication but not otherwise receiving treatment.

In rebuttal testimony, the school official testified that the school system was not always able to immediately provide bus transportation when the family moved to a new location, but that school officials would sometimes personally provide transportation and

---

[2] A person with legal custody of a child between the ages of 5 and 16 who fails to ensure that the child attends school or otherwise receives instruction is subject, for a first offense, to a fine of $50 for each day the child is absent and imprisonment for up to three days.  ED §7-301(e)(2)(i).  Enhanced penalties apply for subsequent convictions.

[3] According to the testimony of the school official, the school records showed that the child had attended school 79 and one-half days, had been absent without excuse 68 and one-half days, and had been tardy without excuse 34 days.

4

that there were many occasions on which Ms. Tengeres' son missed the bus because his mother did not get him up in time.

In closing argument, defense counsel conceded that he could not fault the efforts of school officials to assist Ms. Tengeres in ensuring that her son attended school. He argued, however, that Ms. Tengeres was "struggling with some really serious fundamental survival issues here that kept her from getting her kid to school."

The District Court found Ms. Tengeres guilty of the charge and sentenced her to three days in the Washington County Detention Center, all suspended, and placed her on unsupervised probation for 18 months with special conditions that, among other things, she ensure that her son attend school regularly.

2. Appeal to Circuit Court

On January 6, 2020, Ms. Tengeres invoked her right to a trial *de novo* in the Circuit Court for Washington County by filing a timely appeal. On January 30, 2020, Ms. Tengeres' counsel filed a paper in the Circuit Court entering a not guilty plea on her behalf and asking for a jury trial.

*Postponement of Trial* De Novo

The trial in the Circuit Court was originally scheduled for March 23, 2020, but defense counsel requested a postponement in early February for personal reasons, and the court re-scheduled the trial for June 22, 2020. In the interim, the Covid-19 pandemic arrived in Maryland and many court proceedings, including Ms. Tengeres' trial, were suspended or delayed.

*Pandemic Postponements and Phased Reopening of Courts*

The Chief Judge of the Court of Appeals issued administrative orders in early 2020 that governed court proceedings during the pandemic emergency and its aftermath and that instructed the State's courts how to manage their dockets. Those orders initially postponed most court proceedings and envisioned a gradual return to normal court proceedings with precautions as the public health permitted.

The administrative orders described five phases and the types of court proceedings that would be conducted during each phase.[4] Phase I, which began March 16, 2020, required the postponement of all but a few categories of matters. Phase II, which began on June 5, 2020, marked the beginning of the resumption of some court operations, but did not include criminal trials in the circuit courts. During Phase III, which began on July 20, 2020, circuit courts would hold, among other proceedings, "jury prayer status hearings" such as the one that generated this appeal, and non-jury trials in criminal cases. During Phase IV, the courts would open for additional categories of proceedings not pertinent to this case. In Phase V, scheduled to begin on October 5, 2020, courts would commence full operations, including jury trials.[5]

---

[4] A summary of the phases and their duration can be found at https://perma.cc/A6YD-XDYJ. The pertinent administrative order in effect at the time the Circuit Court scheduled the status hearing in Ms. Tengeres' case was the Amended Administrative Order on the Progressive Resumption of Full Function of Judiciary Operations Previously Restricted Due to the Covid-19 Emergency (June 3, 2020), available at https://perma.cc/VY5V-7JDQ.

[5] As a result of a surge in Covid-19 infections during the fall of 2020, the court system reverted back to Phase II during the period from November 16, 2020 through November 29, 2020, to Phase III for the period from November 30, 2020 through March

*Status Hearings in the Circuit Court*

In the summer of 2020, in an effort to attend to the backlog of criminal cases consistently with the administrative orders, the Circuit Court planned to hold brief status hearings in each case in order to schedule future proceedings appropriately. (Certain court filings and forms also referred to these proceedings as "status conferences."). A letter on the letterhead of the Circuit Court administrative judge to "Members of the Criminal Law Bar" outlined the plan, including the purpose and consequences of a status hearing.[6] The letter explained that status hearings were being scheduled in all criminal cases "that are in a trial posture." The evident purpose was to triage cases into three groups: (1) cases in which a defendant was ready to accept the State's plea offer and enter a guilty plea or to accept another disposition offered by the State – a proceeding that could be held during Phase III; (2) cases in which the defendant desired a bench trial – also a proceeding that could be held during Phase III – which would be postponed to a date one week after the status hearing; and (3) cases in which the defendant desired a jury trial, which would be postponed to a date after October 5, 2020 – the beginning of Phase V, in which jury trials were to resume.[7]

14, 2021, and to Phase IV during the period from March 15, 2021 through April 25, 2021, and has only recently returned to Phase V. However, those later developments do not affect the issues in this case, which concern events during the initial Phase III of the courts' reopening.

[6] The letter is undated. Ms. Tengeres' counsel has represented in his brief, and the State does not dispute, that he received the letter on July 15, 2020 attached to an email.

[7] As indicated in the text, the process described in the Circuit Court administrative judge's letter would include an inquiry into whether a defendant intended to accept a plea

7

The Circuit Court administrative judge's letter explained that only counsel and the defendant would attend the status hearing; witnesses would not be present, except for victims who had a legal right to attend and who would do so by telephone. Defendants who had already decided, after consultation with counsel, to reject the State's plea offer and to ask for a jury trial were given the option to forgo the status hearing by filing a one-page form "line" signed by the defendant and counsel that recited those decisions. (That form was attached to the administrative judge's letter). The administrative judge's letter warned that "[u]nless a completed line is filed, the Defendant's failure to appear may result in the issuance of an arrest warrant."[8] The letter did not address appeals from the District

---

offer from the State or to proceed to trial, presumably to ensure that cases that would be resolved through pleas would not delay the effort to schedule defendants desiring trials for as speedy a trial as feasible. While such an inquiry does not on its face involve the court in the negotiation of a guilty plea, we note that further inquiry into the details of a plea offer and the parties' negotiations could lead a court into places it should not go. *See Sharp v. State*, 446 Md. 669, 699-701 (2016) (cautioning against trial court involvement in plea negotiations); *see also Brown v. State*, 470 Md. 503, 516 n.4 (2020) (noting that judicial involvement in plea bargaining raises a myriad of issues and is discouraged in many jurisdictions).

[8] The relevant parts of the letter read as follows:

As you are aware, Phase 3 of the Court's reopening begins on Monday, July 20. In an effort to get criminal cases that lost their trial dates due to the Court's closure reset properly, the Court is setting in all criminal cases that are in a trial posture for a status hearing. These status hearings will be occurring in person at the courthouse. . . . At the status hearing, the Defendant may elect to enter a plea or other disposition offered by the State, the Defendant may elect to be tried by a jury and have his case continued to a date after October 5, 2020, or the Defendant may elect to proceed by way of a bench trial and have his case continued for a period of one week so that a courtroom can be made available and witnesses can brought in to testify.

Court for trials *de novo* separately from criminal cases that originated in the Circuit Court. The letter concluded with a description of protocols for entering and leaving the courthouse during the pandemic.

*Status Hearing in Ms. Tengeres' Appeal*

On June 25, 2020, the Circuit Court scheduled a status hearing in Ms. Tengeres' appeal for July 20, 2020, at 10 a.m., during the first day of the court's Phase III reopening. The notice for the status hearing indicated that any request to postpone the status hearing was to be addressed to the court pursuant to Rule 2-508. That rule generally provides that, on motion of a party or on its own initiative, a circuit court may postpone a proceeding "as justice may require." Maryland Rule 2-508(a).

---

Witnesses will not be present for the status hearings, except for victims of crimes that have a legal right to be present. The Court . . . will make every effort to have victims appear telephonically to promote social distancing and reduce the number of people in the courthouse.

The Defendant is expected to appear in person unless, after consultation with counsel and careful consideration of the Defendant's options, the Defendant determines that he/she wishes to be tried by a jury and intends to reject the State's plea offer thereby making the status hearing unnecessary. If so, the Defendant and Defendant's counsel may complete and sign the attached line and submit it to the Court. Once the Court is in receipt of the completed and signed line, the Court will cancel the status hearing, excuse the Defendant and counsel from appearing at the status hearing, and find good cause to continue the case for a jury trial to be set after October 5. Unless a completed line is filed, the Defendant's failure to appear may result in the issuance of an arrest warrant.

As is evident, while administrative orders issued by the Chief Judge of the Court of Appeals generally referred to the phases of Covid-19 related measures by Roman numerals, in other, less formal, contexts, Arabic numerals have been used to refer to the same phases.

Ms. Tengeres' defense counsel did not file a line with the court reiterating her election of a jury trial.[9]  At the July 20, 2020 status hearing, defense counsel was present, but Ms. Tengeres was not.  In a colloquy with the court, defense counsel alluded to difficulties locating Ms. Tengeres and said he had reached her only shortly before the status hearing began.  He said that she was unable to get to the courthouse that day, and he asked for a brief continuance:

| | |
|---|---|
| THE COURT: | So, [defense counsel] did you get a hold of your client or what? |
| [DEFENSE COUNSEL]: | Your Honor, I have tried without success in probably the past two weeks to get a hold of my client although I can say that I just spoke to her moments ago.  We didn't have a good number on record for a long time.<br>The long and short of it is, Judge, she will not be able to get here today.  She did not get notice.  I did specifically ask her about perhaps if we could set this in a relatively – you know, a week [or] so, a relatively short time.  I think I now have a good phone number for her.  I now have a good address for her.  So, if we could set it in again sometime in the near future, I feel confident we could – |
| THE COURT: | You should . . . have had her good address all along. Not maybe your fault, but hers. |
| [DEFENSE COUNSEL]: | No, and . . . I can speak to that as well, Your Honor. |
| THE COURT: | All right. |

---

[9] It seems safe to assume that the jury trial request that defense counsel filed at the outset of the appeal did not suffice for purposes of this status conference.  According to defense counsel's brief, such papers are filed in "virtually every case" in which there is an appeal from the District Court to the Circuit Court for Washington County.

[DEFENSE COUNSEL]: My client . . . has been homeless for a long time. But I now have a place I can get a hold of her. I did attempt before today to do that and unfortunately it didn't happen until today. So, I'm going to ask that we set this in (unintelligible).

The State opposed the request for a postponement, arguing that the court lacked discretion to do anything other than dismiss Ms. Tengeres' appeal. The prosecutor noted that, under Maryland Rules 1-321 and 1-324, notice of the status hearing was effective upon service on counsel[10] and, apparently referring to Rule 7-112(f)(1), that the relevant rule stated that the court "shall dismiss" an appeal if the appellant "does not show up."

Without directly addressing the request for a postponement, the Circuit Court agreed with the State that dismissal was mandatory and dismissed Ms. Tengeres' appeal as a result of her absence. However, the court advised defense counsel that Ms. Tengeres could file a motion to reinstate the appeal, stating that "she has 30 days to … change my mind on it." The court was apparently referring to a motion under Rule 7-112(f)(3) to reinstate an appeal. The case docket and a paper filed under the clerk's signature indicated that the appeal had been "withdrawn."

---

[10] Rule 1-324(a) provides that, when a court proceeding is scheduled (other than when announced on the record during a hearing or trial), the clerk is to send notice of the scheduled proceeding to parties entitled to receive notice under Rule 1-321. In turn, Rule 1-321(a) provides that, in general, when a party is represented by an attorney in a case, service of a pleading (other than an original pleading) or paper is to be made upon the party's attorney, unless otherwise ordered by the court. As the prosecutor asserted, these two rules in tandem made notice to Ms. Tengeres' attorney sufficient to provide notice of the hearing in compliance with the Maryland Rules.

No one apparently noticed at that time that the only consequence of a defendant's failure to appear that had been mentioned in the administrative judge's letter describing the status hearing process was the possibility that an arrest warrant would be issued for an absent defendant.

*Motion to Reinstate*

As invited by the Circuit Court, on August 13, 2020, Ms. Tengeres' counsel filed a Motion to Reinstate Appeal. That motion reiterated that Ms. Tengeres herself had not received prior notice of the status hearing and that defense counsel ultimately had reached her on the morning of the hearing via a family member. The motion further elaborated that, when she learned about the status hearing the day of the hearing, Ms. Tengeres could not appear immediately because she had a young child who would require a caretaker and because public transportation, her only means of transportation that day, would not have gotten her to the courthouse in time. Citing case law, the motion argued that reinstatement of an appeal pursuant to Rule 7-112(f)(3) should be granted liberally and would be particularly appropriate in Ms. Tengeres' case as the dismissal was based on her absence from a status hearing during the Covid-19 pandemic. As an alternative ground, the motion argued that the status hearing process created by the Circuit Court, insofar as it resulted in dismissal of an appeal from the District Court for a trial *de novo*, was unconstitutional as a violation of a defendant's due process rights under the State and federal constitutions. The State did not respond to the motion to reinstate the appeal.

On August 31, 2020, the Circuit Court denied the motion without explanation. Ms. Tengeres filed a Motion to Reconsider on September 4, 2020, and the court denied it without explanation a few days later.

### 3. Further Appeal to this Court

Because this case involves an appeal to the Circuit Court of a final judgment in the District Court, any further appeal is by a petition for a writ of *certiorari* to this Court pursuant to CJ §12-305. Ms. Tengeres filed such a petition, which we granted on November 20, 2020.

## II

### Discussion

Ms. Tengeres has raised two issues in this appeal:

(1) Whether the Circuit Court abused its discretion in denying Ms. Tengeres' motion to reinstate her appeal from the District Court for a trial *de novo*.

(2) Whether the Circuit Court violated her due process rights when it dismissed her appeal for failure to appear at a status hearing.

For the reasons set forth below, we hold that the Circuit Court abused its discretion when it denied the motion to reinstate Ms. Tengeres' appeal, and we remand the case for the Circuit Court to reinstate that appeal. We do not reach the second question posed by Ms. Tengeres.

### A. *Standard of Review*

We review the denial of a motion to reinstate an appeal pursuant to Rule 7-122(f)(3) under an abuse of discretion standard. *Mobuary*, 435 Md. at 436. The abuse of discretion

standard "requires a trial judge to use his or her discretion soundly and the record must reflect the exercise of that discretion." *Id.* (quoting *Kelly v. State*, 392 Md. 511, 531 (2006)). A court abuses its discretion when it acts in an arbitrary or capricious manner or acts beyond the letter or reason of the law. *Id.*

**B.** **Whether Denial of the Motion to Reinstate the Appeal was an Abuse of Discretion**

1.    Was Denial of the Motion to Reinstate an Exercise of Discretion?

As an initial matter, it is not entirely clear that the Circuit Court actually exercised discretion when it denied Ms. Tengeres' motion to reinstate her appeal. As recounted above, the court accepted the State's position that it had no discretion under Rule 7-112(f)(1) to do otherwise than dismiss her appeal because that rule states that the court "shall dismiss" an appeal when the appellant fails to appear for a proceeding. In advising defense counsel that Ms. Tengeres had 30 days to file a motion to reinstate, the court referred to such a motion as an opportunity for her "to change [the court's] mind on it" – a comment that could have meant that she had an opportunity to change the court's mind on whether it actually had any discretion *not* to dismiss the appeal. When the court later denied the motion to reinstate and the motion to reconsider denial of the motion to reinstate, it provided no explanation for either decision. It was quite possible – and consistent with the court's statements and actions – that it mistakenly believed it was compelled, as a matter of law, to both dismiss the appeal and deny the motion to reinstate it, and never exercised any discretion in that regard.

One potential disposition of this appeal would be to remand the case to the Circuit Court for it to clarify whether it exercised discretion in denying the motion to reinstate; if

14

so, to explain how it came to that decision; and, if not, to reconsider the motion to reinstate and exercise that discretion in the first instance. However, given the undisputed facts in the record of this case, the Circuit Court would abuse its discretion if it did not reinstate the appeal. In the interest of judicial economy and for the reasons stated below, we remand for the court to reinstate the appeal.

2. Was There Good Cause to Reinstate the Appeal?

As indicated above, determination of the motion to reinstate the appeal turned on whether there was "good cause shown" for the Circuit Court to take that action. As a general rule, that standard is to be liberally applied, particularly in a criminal case in which a defendant/appellant's absence is not willful or voluntary.

*Mobuary – Good Cause Standard to be Liberally Applied*

In *Mobuary*, the defendant was convicted of assault charges in the District Court. He sought a trial *de novo* in the circuit court but was incarcerated on the day his case was to be heard. The prosecutor advised the circuit court that she had heard from a corrections officer that the defendant had refused to be transported to court; the defense attorney advised that he had been told the same information, but did not otherwise express a position on the matter. The circuit court dismissed the appeal. After later learning from his client that the defendant had not refused transportation, defense counsel filed a motion to reinstate the appeal, and the defendant himself wrote to the court insisting that he wanted to pursue the appeal. The circuit court denied the motion, and this Court granted a writ of *certiorari*.

In its opinion, the Court addressed the standard of "good cause" for reinstatement of an appeal under Rule 7-112(f)(3). The Court stated that whether an appeal for a trial *de*

15

*novo* had been properly dismissed under subsection (f)(1) of Rule 7-112 was a "separate and distinct question" from whether the circuit court had appropriately exercised its discretion in later denying a motion to reinstate that appeal under subsection (f)(3) of the rule. *Id*. at 435. The standard of "good cause" is to be "liberally construed," as the history of that rule reflects the Court's "intention to increase, rather than decrease, the remedy available under the rule." 435 Md. at 437 (internal quotation marks and citation omitted).

The Court then turned to the question whether the circuit court had abused its discretion in denying reinstatement of the appeal in that case. Looking to the "totality of facts and circumstances," including those that became known after dismissal of the appeal, the Court noted that there was a "weak basis" for dismissal of the appeal. 435 Md. at 437. At the very least, the Court stated, there was good cause for a hearing on the motion to reinstate, at which the defendant's credibility about his willingness to come to court – and presumably that of the individuals who had provided contrary information – could be tested. *Id*. at 438. Accordingly, the Court vacated the judgment of the circuit court and remanded the case for a determination of whether there was good cause to reinstate the appeal. *Id*. at 442.[11]

*Stone – An Appellant's Absence Must be Willful or Voluntary*

*Stone* also involved an appeal for a trial *de novo* in a criminal case by an incarcerated defendant/appellant – in that instance, incarcerated in another state. The defendant had

---

[11] The Court also noted that the circuit court had applied the wrong standard, derived from a different rule, in deciding the motion to reinstate under Rule 7-112(f)(3). 435 Md. at 438-42.

16

been brought to Maryland under the Interstate Agreement on Detainers ("IAD")[12] and convicted in the District Court. By the time he appealed that conviction, he had been returned to the other state. He attempted to invoke his right under the IAD to be brought to Maryland for his trial *de novo* in the circuit court. At the appointed time for the circuit court trial, the defendant was absent; the State advised the court that the absence was attributable to the defendant's failure to follow certain formal procedures under the IAD.[13] The circuit court treated the appeal as withdrawn and dismissed it. This Court then granted the defendant's petition for a writ of *certiorari*.

The Court began its analysis by referring to a criminal defendant's right to be present at trial. 344 Md. at 106. The Court stated that a defendant's "right to be present at a trial *de novo* cannot be considered waived by non-appearance, that is, withdrawn, when the trial court has information that the appellant's failure to appear was neither wilful nor voluntary." *Id.* Conversely, if there is no information before the court explaining the

---

[12] For a description of how the Interstate Agreement on Detainers operates, see *Aleman v. State*, 469 Md. 397, 403-12 (2020).

[13] The defendant had been charged with the crime of theft in the District Court but was incarcerated at that time in Pennsylvania. The defendant invoked his right under the IAD to be brought to Maryland to resolve the charges against him. He was convicted of the theft charge in the District Court and, following sentencing, was returned to Pennsylvania's custody to continue serving his sentence there. In the meantime, the defendant noted a timely appeal to the circuit court, which then scheduled a *de novo* jury trial on the charges. When the defendant sought to be returned to Maryland again under the IAD for purposes of the circuit court trial, Pennsylvania declined to do so, apparently believing that the earlier trial and sentencing in the District Court had resolved the charges. 344 Md. at 100-03.

defendant's absence, the court may properly presume the absence to be voluntary and consider the appeal withdrawn.[14] *Id.*

The Court then considered whether the defendant in that case was at fault for his failure to appear via the IAD. The Court concluded that he was not, as the other state – which believed that it had already complied with its obligations to Maryland under the IAD – would not have returned him to Maryland "no matter how diligently he pursued his rights under the [IAD]." 344 Md. at 113. Having concluded that the defendant's absence was not willful or voluntary, the Court held that the circuit court erred when it dismissed his appeal. *Id.* at 114.

*Summary*

The rules and case law suggest the following approach in an appeal in a criminal case from the District Court for a trial *de novo* in the circuit court. A circuit court confronted with the absence of the defendant/appellant, and no explanation for that absence, may assume, as indicated in *Stone*, that the absence is willful or voluntary and dismiss the appeal pursuant to Rule 7-112(f)(1). On the other hand, if the court is presented with information that could amount to good cause for the absence and with a request for a postponement, the court should ordinarily grant a continuance in order to assess the merits of that information. If the court is ultimately not satisfied that there is good cause for the

---

[14] At the time of the decision in *Stone*, the rule provided that an appeal was "considered withdrawn" if an appellant failed to appear for a proceeding and that, upon such withdrawal, the circuit court was to dismiss the appeal. Maryland Rule 7-112(d) (1996). *See* footnote 1 above.

absence, the appeal may be dismissed. If the appeal is dismissed and it later becomes evident, in light of the "totality of the facts and circumstances," that there was good cause for the defendant/appellant's absence, the appeal should be reinstated.

*Application to this Case*

The undisputed facts in the record relevant to the motion to reinstate Ms. Tengeres' appeal demonstrate that her absence from the status hearing was not willful or voluntary. She had appeared for every other proceeding for which her presence was required in both the District Court and Circuit Court. She consistently sought to contest the charges against her and to pursue her right to appeal for a trial *de novo*. That trial had been originally scheduled for March 2020 and was initially postponed for reasons unrelated to her and then further postponed as a result of a global pandemic. Of all the participants in her case, she had the least control of any over the schedule and no reason to expect a mandatory status hearing at any particular time after those postponements.

By the time that the motion to reinstate the appeal was filed, there was ample information in the record to explain Ms. Tengeres' absence from the status hearing: She was unaware of the hearing as she had not received actual advance notice, she was charged with the care of a young child and would have had difficulty finding childcare on short notice, and she lacked ready transportation to the courthouse. Unlike the situation in *Mobuary*, none of these facts was disputed by the State.

To be sure, Ms. Tengeres had constructive notice of the status hearing under the Maryland Rules when her counsel received the written notice from the court. But there was no indication that she was actually aware of the hearing until "moments" before it was

19

scheduled to start.[15]  And, by the time she was aware of the hearing, she was in no better position to attend than the incarcerated defendants/appellants in *Stone* and *Mobuary*.[16]

Finally, the status hearing that Ms. Tengeres missed did not bear on any factual or legal issue in her case, but was simply the Circuit Court's effort to triage all of its pending criminal cases appropriately – which the court was satisfied to do in many cases without the appearance of a defendant or counsel.  Moreover, the notice of the hearing itself indicated that the court was willing to entertain requests for postponement of a status hearing under Rule 2-508 – an accommodation to be granted "as justice may require."[17]

---

[15] Although it was not repeated in the motion to reinstate, we also note that it was undisputed that Ms. Tengeres' homelessness substantially contributed to her failure to appear for the status hearing.  At the hearing, defense counsel explained that he had tried to reach Ms. Tengeres for "probably the past two weeks" but had been unsuccessful because "[w]e didn't have a good number on record for a long time."  After the court commented that perhaps it was Ms. Tengeres' fault that defense counsel had lacked current contact information for her, defense counsel replied that it was not Ms. Tengeres' fault, as she had "been homeless for a long time."

[16] While we do not equate a parent's need to care for a child with incarceration, we note that the obligation to do so is enforced not only by familial affection, but by statute. Maryland Code, Family Law Article ("FL"), §5-701(s) (defining "neglect" to include a parent "leaving a child unattended … under circumstances that indicate … that the child's health or welfare is … placed at substantial risk of harm"); FL §5-801 (person charged with care of child less than 8 years old may not leave child confined in a building or motor vehicle unless there is a "reliable person" at least 13 years old with the child).

[17] Had counsel located her in advance of the hearing and obtained her signature on the form line, her presence would have been excused.  Given that the notice of the status hearing contemplated motions to postpone the hearing under Rule 2-508, it seems quite possible that this situation might also have been avoided had defense counsel, prior to the date of the status hearing, advised the court and opposing counsel of his inability to locate Ms. Tengeres and obtained a postponement of the status hearing until he could do so and file the requisite form.

In light of the "totality" of undisputed "facts and circumstances" in this case, in conjunction with the liberal construction to be accorded the "good cause" standard of Rule 7-112(f)(3), it would be an abuse of discretion for the Circuit Court to decline to reinstate Ms. Tengeres' appeal. Accordingly, there is no need to remand for the Circuit Court to make that determination. Our resolution of this issue also makes it unnecessary to address Ms. Tengeres' argument that the status hearing process and the dismissal of her appeal violated her due process rights under the State and federal constitutions.

## III

## Conclusion

For the reasons set forth above, there was good cause to grant Ms. Tengeres' motion to reinstate her appeal. The Circuit Court abused its discretion when it failed to do so.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR ENTRY OF AN ORDER REINSTATING PETITIONER'S APPEAL. COSTS TO BE PAID BY WASHINGTON COUNTY.**